# WARNER v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

### Division One, November 25, 1903.

1. **One New Trial: DEMURRER TO EVIDENCE.** The Supreme Court will not interfere with the discretion of the trial court in granting one new trial, on the ground that it had erred in sustaining a demurrer to the evidence, unless the case made out was such that under no circumstances whatever could a verdict in favor of plaintiff be permitted to stand. And such is found to be this case.

2. **Negligence: DEMURRER PROPERLY SUSTAINED.** The evidence showed that a street car on its way from a suburban town to the city, on a dark night and in the outskirts of such town, "struck something." An examination showed the left wheel of a cart fastened around a trolley pole between the tracks, the ends of the shaft extending towards and resting on one rail of the track on which was the car, the ends thereof crushed by the car running over it, and the body of deceased lying about ten feet from the trolley pole, between the tracks, but entirely outside the track on which the car was running. No horse was found at or near the place of accident. The deceased had been hit on the head, and was unconscious, and remained so until his death. No one saw him on the track or so near to the track as to be in danger of being struck by a car. The car had a headlight that threw the light for a distance of 125 feet ahead of it, and was running at the usual rate of speed, and the gong was sounded when it was about 1000 feet from the place of the accident, and further sharply sounded three times as it neared a crossing about 165 feet from the point of accident, and there was no evidence that the injured party was on the track or that the motorman saw him in peril at all, or that there was any collision between the cart and car, or that his injuries were inflicted by the car. *Held,* that the burden was on the plaintiff to show some act of negligence on the part of the defendant road, and a causal connection between the accident and the negligence charged; and there being a total failure of proof, no verdict against the defendant could ever be permitted to stand.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

REVERSED AND REMANDED (*with directions*).

*McKeighan & Watts* and *Robt. A. Holland, Jr.,* for appellant.

(1)    The court erred in setting aside the nonsuit and granting plaintiff a new trial, because there was no evidence whatever of any negligence on the part of defendant.    (2)    The court erred in setting aside the nonsuit because even if it were granted, for the purpose of argument, that there was evidence of negligence on the part of defendant's motorman, there was no evidence whatever, direct or circumstantial, showing any causal connection between such negligence and the death of Warner.    It is incumbent upon plaintiff in a suit of this kind to establish not only negligence on the part of defendant, but also a causal connection between such negligence and the injury sustained.    Fuchs v. St. Louis, 167 Mo. 620; Bailey on Master and Servant (1897), pp. 1659 and 1660; Sorrenson v. Penasha Paper Pulp Co., 56 Wis. 338; Searles v. Railroad, 101 N. Y. 661; Taylor v. City of Yonkers, 105 N. Y. 202; Epperson v. Postal Telegraph Co., 155 Mo. 346; Pierce v. Kile, 26 C. C. A. 201.    (3)    The testimony of plaintiff shows that had the deceased looked or listened he could have seen or heard the approach of the defendant's car in ample time to have avoided being struck.    The deceased was, therefore, guilty of contributory negligence as a matter of law, and the court was warranted in giving a peremptory instruction on this ground.    Payne v. Railroad, 136 Mo. 534; Yancey v. Railroad, 93 Mo. 433; Kelsey v. Railroad, 129 Mo. 369; Lenix v. Railroad, 76 Mo. 86; Culbertson v. Railroad, 140 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Maxey v. Railroad, 113 Mo. 1.

*R. L. & John Johnston* for respondent.

Acting on the spur of the moment, the trial court gave the instruction asked by defendant, compelling

plaintiff to take a nonsuit, with leave. But upon plaintiff's motion to set aside the nonsuit and for new trial, and after having the matter under advisement from the 15th to 27th day of July, the Court sustained said motion "on the ground that said instruction asked by defendant should not have been given." This action of the trial court, respondent contends was right and should be affirmed by this court; and, to sustain this contention, respondent cites the following cases: Humbird v. Railroad, 110 Mo. 76; Hilz v. Railroad, 101 Mo. 36; Gurley v. Railroad, 104 Mo. 211; Burger v. Railroad, 112 Mo. 238; Brown v. Railroad, 50 Mo. 461; McPheeters v. Railroad, 45 Mo. 22; Gabel v. Railroad, 60 Mo. 475; Schmidt v. Railroad, 119 Mo. 266; Minister v. Railroad, 53 Mo. App. 276; Powell v. Railroad, 59 Mo. App. 626. Warner was no trespasser on defendant's tracks; he had the lawful right to cross the tracks at that point, and there is not a syllable of evidence showing any contributory negligence on his part. All the circumstances detailed by the witnesses prove to a demonstration, that while driving across the tracks in the dark Warner's horse frightened, most likely by the noise and light of the approaching car, and plunged forward, bringing one wheel of the cart in collision with the iron trolley pole; the horse broke loose from the cart and ran, the shafts dropped to the ground and necessarily pitched Warner forward upon the track. The nature and place of his wounds show that when struck by the car, Warner was standing erect and in the act of stepping back off the track—he had cleared the track but not far enough to escape the body of the car which is considerably wider than the track, but a delay of one second in the approach of that car would have saved his life. And it staggers belief, that defendant's motorman stood on the front platform of that car, with the track ahead of him lighted up for a distance of 125 feet, and necessarily shining upon Warner's cart in dangerous proximity to the track, itself a danger signal, jeo-

pardizing the lives and limbs of himself and every passenger on his car, and yet made no attempt to check the speed or stop his car. It did not need the testimony of three of plaintiff's witnesses to satisfy us that the motorman was drunk as a lord, and reckless in the running of his car as a Comanche Indian, and that this utter disregard of the duty he owed the deceased at that usual and dangerous crossing was the direct cause of Warner's death.

MARSHALL, J.—This is an action under the statute to recover five thousand dollars damages for the death of the plaintiff's husband, Ira B. Warner, on January 22, 1900, on Lockwood avenue, between Gore and Grey avenues, in the town of Webster, alleged to have been caused by being struck and mortally injured by one of defendant's cars, then being run on the defendant's street railroad tracks upon said street. The accident occurred between seven and eight o'clock at night, and the petition charges that the night was "quite dark" and the tracks at the point of the accident were "dimly lighted," and the accident is alleged to have occurred about seventy feet east of Grey avenue. The negligence charged in the petition is that, "The said car was then and there running east on a down grade at a rapid and dangerous rate of speed, and no bell was sounded nor warning given by said defendant, its agent and employees in charge of said car, until too late to enable said deceased to avoid said collision and escape from his perilous position; that defendant's motorneer in charge of and running said car saw, or by the exercise of ordinary care would have seen, the said peril of plaintiff's said husband at said time and place in time to have stopped said car and avoided said collision, or so checked the speed and delayed said car as would have given said deceased sufficient time to escape from his position of peril upon said tracks, but defendant's said

motorneer then and there carelessly, negligently and recklessly failed so to do.''

The answer is a general denial and a plea of contributory negligence.

At the close of the plaintiff's case, the defendant demurred to the evidence, the court sustained the demurrer, and the plaintiff took a nonsuit with leave. The plaintiff moved to set aside the nonsuit, the court sustained the motion, on the ground that it had erred in sustaining the demurrer to the evidence, and the defendant appealed from that ruling of the court.

As the only question in the case that is open to review in this state of the record is, whether the plaintiff made out a case for the jury, the evidence will be stated and considered in the course of the opinion, rather than stating it separately.

I.

The error assigned is that the trial court erred in setting aside the nonsuit, because the plaintiff made out no case that entitled her to go to the jury.

In cases of this character this court has always refused to interfere with the discretion of the trial court in granting one new trial to a party litigant, unless the case was such that under no circumstances whatever could a verdict in favor of the plaintiff be allowed to stand. [Hoepper v. Southern Hotel Co., 142 Mo. l. c. 387; Haven v. Railroad, 155 Mo. l. c. 229, and cas. cit.]

The facts disclosed by the evidence are that the defendant is an electric street railroad, and has a line of double tracks on Lockwood avenue, in the town of Webster. The poles that carry the trolley wire are located between the tracks. Between Gore Avenue and Jefferson Barracks road, a distance of over one thousand feet, the track is straight. Between Grey avenue and

Silent avenue there is a depression in the street, so that looking westwardly from a point at any place between Gore and Grey avenues, only the top of the car can be seen, but the noise made by the running of the car can be easily heard. Between Gore and Grey avenues there were three trolley poles—one about seventy feet east of the east line of Grey avenue, one 113.5 feet east thereof, and the third 114 feet east of the second. It was customary for vehicles traveling west on the north side of Lockwood avenue desiring to go south to Grey avenue, to cross the defendant's tracks between the first and second or between the second and third of these trolley poles, instead of waiting until they reached Grey avenue.

On the night in question a car of the defendant was going eastwardly on Lockwood avenue. It was running at the usual rate of speed, which is shown to be faster than rars usually run in the city of St. Louis, but no faster than the defendant's cars usually run at that place. The gong was sounded at Rock Hill road, which was about a thousand feet west of Grey avenue. The gong was also sounded sharply three times when the car approached Grey avenue, and which was about 160 feet west of the first trolley pole above described. The car ran on eastwardly until it neared Gore avenue, which is three hundred and fifty feet east of Grey avenue, when it was stopped and the motorman said he had hit ''some one'' or ''something,'' and had to go back to find out what it was. He and the passengers on the car then went back towards Grey avenue. When they reached the first trolley pole east of Grey avenue they found a two-wheel cart, with the left wheel fastened around the trolley pole, and the ends of the shaft resting on the north rail of the east-bound track, and such ends were crushed, showing they had been run over by the car. They also found the body of the deceased lying between the east and west-bound tracks, with his head towards the east-bound track, and about ten feet

east of the trolley pole, to which the cart was fastened as aforesaid. He had been hit on the head and was unconscious. He was taken on the car to the Baptist Sanitarium, in St. Louis, where he lingered until February 9th, when he died without regaining consciousness. No horse was found at or near the place of the accident. It appeared that the deceased lived about three miles south of Webster, and that he had business at Webster and Clayton, every few weeks, and that it was his habit when returning from Clayton to drive south on Gore avenue to Lockwood avenue, thence west on the north side of Lockwood avenue until he reached the place between the first and second or second and third poles where vehicles going south usually crossed the defendant's tracks, and thence along the south side of Lockwood avenue until he reached Grey avenue, and to proceed southwardly on Grey avenue to his home. On the day of the accident he went alone to Clayton in his cart.

It appeared that the car had a headlight on it that threw the light for a distance of about one hundred and twenty-five feet ahead of it, and that the car was about ten feet in height and was lighted by electricity.

No one saw the car strike the deceased. No one saw the deceased upon the track or so near to it as to be in danger of being struck by the car.

The physical facts show that the deceased had been hit on the head, but no one knew whether the car hit him or what hit him, and the physical facts would not tell the tale. The physical facts simply showed the left wheel of the cart fastened around the trolley pole, the ends of the shaft extending towards the south, and resting on the north rail of the east bound track, and that such ends had been crushed by the car running over them, and the body of the deceased lying between the tracks, but entirely outside of the rails on which the car was running.

This was the case made by the plaintiff, and upon

this showing the court took the case away from the jury.

The first act of negligence charged against the defendant is that it ran the car at a rapid and dangerous rate of speed. The only evidence adduced in the case is that offered by the plaintiff, and instead of even tending to support this charge, it is all to the effect that the car was running at the usual rate of speed. None of the witnesses were able to state the exact speed, but they all agreed that it was the usual rate at which the cars ran over that part of the road. This charge of negligence was therefore expressly disproved by the plaintiff, and need not be further considered.

The second act of negligence charged against the defendant is that no bell was sounded or warning given by the servants in charge of the car, until it was too late to avoid collision and to enable the deceased to escape from his perilous position.

The evidence not only wholly failed to support this charge, but on the contrary it expressly disproves it, for it shows that the gong was sounded when the car was about a thousand feet from the place of accident, and that it was further sounded sharply three times as the car neared Grey avenue, and at a point about one hundred and sixty feet distant from the place of accident. This charge of negligence was therefore disproved.

The third act of negligence charged is that the motorneer in charge of the car saw, or by exercise of ordinary care could have seen the peril of the deceased in time to have stopped the car and to have avoided the accident, or to have so checked the speed of the car as to have afforded the deceased time to escape from his position of peril, and carelessly, negligently and recklessly failed so to do.

There is not a scintilla of evidence to support this charge. There is absolutely no evidence whatever that the deceased was on the track when the car approached,

nor that the motorman saw him in peril or at all, in time to avoid the accident, nor that there was any collision between the car and the deceased, nor that the injuries of the deceased were inflicted by the car. Neither do the physical facts afford any ground whatever for drawing such an inference of fact.

The only thing the physical facts show is that the wheel of the cart was fastened around the trolley pole, that the ends of the shaft rested on the north rail of the east-bound track, and were crushed by the car running over them. There was no horse there or about there.

These physical facts show that if the deceased had been sitting in the cart when the car passed, he could not possibly have been hurt, for only the ends of the shaft were on the track. From the fact that there was no horse there, and from the fact that the ends of the shaft were resting on the track and were crushed by the car, the conclusion is inevitable that the wheel of the cart had become fastened around the trolley pole, and the horse had broken loose from the cart and run away, and the ends of the shaft had fallen onto the track before the car reached that point. And the only reasonable and fair inference that can be drawn from all the physical facts is that in some way the cart was run upon and became entangled with the trolley pole, and the deceased was thrown out of the cart by the collision of the cart with the trolley pole, and was injured by striking on his head when he fell, and that the horse broke loose and ran off, and that the cart was in that condition and the deceased was already hurt before the car reached the spot. What was the cause of all this is a mere matter of guess or conjecture, but there is nothing in the facts shown or the physics of the case that has even a reasonable tendency to support the negligence charged in the petition.

The burden of proof is primarily upon a plaintiff to prove the negligence charged. It is not enough to show an accident and an injury. A causal connection

must be established between the accident and the negligence charged, in order to make out a case for the jury. Failing in this, as this plaintiff did, the court should take the case from the jury, because if it was submitted to the jury and if a verdict was returned for the plaintiff, it could not stand, for the reason that it would have no foundation in law or in fact to rest upon. [Holman v. Railroad, 62 Mo. 562; Sorenson v. Paper Co., 56 Wis. 338.]

In other words, the mere concurrence of negligence and injury does not make the defendant liable. There must be a direct connection between the negligent act and the injury, and the negligence must be the proximate cause of the injury. [Reed v. Railroad, 50 Mo. App. 504; Stepp v. Railroad, 85 Mo. 229; Moberly v. Railroad, 17 Mo. App. 518; Stoneman v. Railroad, 58 Mo. 503; Harlan v. Railroad, 65 Mo. 22; Nolan v. Shickle, 3 Mo. App. 300, s. c., 69 Mo. 336; Settle v. Railroad, 127 Mo. 336; Kennayde v. Railroad, 45 Mo. 255; Stanley v. Railroad, 114 Mo. 606.]

If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action. [Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Telegraph Co., 155 Mo. 346; Smith v. Bank, 99 Mass. 605; Searles v. Railroad, 101 N. Y. 661; Peirce v. Kile, 26 C. C. A. 201.]

In addition, therefore, to the fact that the evidence wholly fails to support the acts of negligence charged in the petition, the proofs and physics of the case wholly fail to show any causal connection between the negligence charged and the injury, and the facts disclose that the injuries may have occurred from other causes than the negligence of the defendant charged.

The plaintiff, therefore, was properly nonsuited,

and the court erred in granting a new trial.   The judgment of the circuit court sustaining the motion to set aside the nonsuit is therefore reversed and the cause remanded to that court, with directions to vacate its order setting aside the nonsuit and to enter judgment upon the nonsuit theretofore ordered.

All concur.