MARY A. TUCK, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Respondent.*

In the Springfield Court of Appeals, January 26, 1925.

1. **CARRIERS: Humanitarian Rule: Humanitarian Rule Inapplicable, Where Intending Passenger Made no Effort to Extricate Himself from Danger.** Where intending passenger stepped to edge of track

and waved flag to stop train, and made no effort to extricate himself from danger until it was too late, carrier could not be held liable under humanitarian rule.

2. ———: ———: **Carrier Held not Liable under Humanitarian Rule on Facts of Case.** No matter how negligently engineer of train may disregard his duty to persons in places of danger, carrier cannot be held liable under humanitarian rule, unless there is a failure on the part of those in charge of the train to use ordinary care to avoid the injury after something has occurred which should convey information to them that the party in danger will not extricate himself.

3. ———: ———: **Engineer Could Assume That Intended Passenger Would Act as Ordinarily Prudent Man in Regard to His Own Safety.** Where intended passenger stood so near track in using flag to stop train that train could not pass without hitting him, engineer had right to assume that deceased would act as ordinarily prudent man in regard to his own safety and would step out of danger before train could strike him, even though it did not slacken its speed.

---

*Headnotes 1. Carriers, 10 C. J., Section 1490; 2. Carriers, 10, C. J. Section 1490 (Anno); 3. Carriers, 10 C. J., Section 1490 (Anno).

Appeal from the Circuit Court of Christian County.— *Hon. Fred Stewart,* Judge.

AFFIRMED.

*L. Cunningham,* of Bolivar, *Sam M. Wear,* of Springfield, and *Hamlin & Hamlin,* of Springfield, for appellant.

(1) The defendant invited the public to patronize train No. 103 and for the accommodation of all parties provided a flag for use. Therefore, it was the duty of the engineer and fireman to keep a lookout, and the train under control in approaching the station. Guenther v. St. Louis, I. M. & S. Railway Co., 95 Mo. 286. This case falls within the rule stated in the case of Kellny v. The Mo. Pac. Railway Co., 101 Mo. 67. (2) It was as much the duty of the railroad employees to look out for the

deceased on the track, or near it as it was for him to look out for the train. Kellny v. Railway Co., supra, page 78; Eswin v. Railroad, 96 Mo. 290. The question whether the deceased acted imprudently in attempting to stop the train as he did should have been passed upon by the jury in the light of all the facts and circumstances in the case. Kellny v. Railway, supra, 78; Kelly v. Railroad, 70 Mo. 604; Smith v. Railroad, 61 Mo. 588; Myer v. Railroad, 40 Mo. 151. (3) The deceased had a right to expect a response to his signals, knowing that fact he was in a position of peril from the time the employees saw, or by the exercise of ordinary care could have seen him and his situation of peril continued until the engine struck him. (4) It was the duty of the engineer to see the road crossing, whistling post, switch stand, station-house, and platform, and he "would be expected to keep the track leading to the depot under his eye" . . . the platform and flag "had been used for a long time, with the tacit acquiescence of the defendant by the people of that community in boarding defendant's train" this custom had prevailed for many years and no attempt was made by the defendant to prevent the continuance. Under the facts in the case "the engineer had no right to expect a clear track, . . . it was the duty of the defendant's servants to use ordinary care to discover the peril of the deceased . . . and under the evidence they saw his peril in ample time to have warned him, the demurrer should have been overruled. Murphy v. Railroad, supra. (5) The employees knew the public had a right to use the platform and tracks at the station, that being true, a duty arose requiring them to look out, "and the liability was not limited to want of care after discovery of the danger." Morgan v. Wabash Railroad Co., 159 Mo. 262-79. (6) It is axiomatic that what one knows and what he ought to know are regarded in law as equivalent. Ellis v. Street Railway, 234 Mo. 657-73. He "must be held to have seen what he could have seen had he been exercising the care required of him by law."

Lavine v. Railway Co., 217 S. W. 574-6 citing Ellis v. Railroad, supra. (7) Deceased and the defendant's agent flagged the train when it was about the whistling post, one thousand three hundred twenty-nine feet away, nothing intervened to obstruct vision between the points, yet no effort was made to stop the train or slacken its speed until after it struck the deceased. Those facts show negligence on the part of the defendant and entitled the plaintiff to have the issues submitted to the jury. McQuire v. Chicago & A. R. Co., 288 S. W. 541. The deceased had a right to "presume that the engineer and others of the crew managing the train would use ordinary care to avoid injuring him, and would not move the train upon him in a manner contrary to the usual practice . . . Hulse v. Railway Co., 214 S. W. 150-3; Eckhard v. Transit Co., 190 Mo. 593; Moon v. Transit Co., 237 Mo. 425. (8) Elwood was a stopping point and deceased especially had a right to assume that the train would be running at a decreased speed in approaching the station, and further to assume that the agents in charge of said train were performing their duty. Clooney v. Wells, 252 S. W. 72, par. 3, page 74. In approaching the station and especially from the time of reaching the whistling post it was the duty of the engineer to slacken the speed and look out for passengers, and answer all signals indicating that passengers desired to board the train. Cercido v. Railway Co., 221 S. W. 434. In that case the evidence showed the alley in question was a public one, which was used by persons going to and fro and especially at the noon hour. The court said on those facts, "it shows from this that there was a duty resting on defendant to look out for and keep a careful watch for persons near, or on the track as its engine passed through the alley . . . that the appliances on the engine were proper as required by law is presumed." (9) A failure to observe the care required under the circumstances in ascertaining the peril of the deceased by the employees of the defendant renders the company liable notwith-

standing the negligence of the deceased. Hanlon v. Railway Co., supra. The deceased was a passenger, therefore, the servants of the defendant owed him the highest duty. Barker v. Railway Co., 98 Mo. 50-4.

*W. F. Evans,* of St. Louis, *John H. Lucas* and *Wm. C. Lucas,* of Kansas City, *G. Purd Hays,* of Ozark, and *W. P. Sullivan,* of Billings, for respondent.

(1) There is no room for the application of the Humanitarian Rule. Giving to the respondent the full benefit of all doubt, and all reasonable inferences, this fact remains. The deceased with full knowledge of the oncoming train went into the zone of danger, unnecessarily and remained thereon, with knowledge that to do so was to invite death. Her theory is, that seeing an oncoming train running "30 or 40" miles an hour, a quarter of a mile away he could enter the zone of danger, and his act not be the proximate cause of his death, and when notified in time to step from such danger to one of safety, his action was and is not the proximate cause of his death. That is, with less than one quarter of a minute of time, one can court with death and his death not be the proximate cause of his own act. (2) The books abound with convincing and controlling authorities that there can be no recovery. Ever since the opinion of Boyd v. Wabash & Western Railroad, 105 Mo. 371, l. c. 379, 382, without a discordant note a right of recovery has been denied, and will continue to be until we shall write the law, that a public carrier is a public guarantor. "What could the engineer presume, but that such a man, like all other men, having due regard for their own safety, and governed by the ordinary instinct of human nature would stop before he reached the point of peril patent before him." And applying the principle to the instant case, it was in December, early dawn, if the engineer saw the deceased, would he not as a reasonably prudent man, have assumed that he was not in a position of

peril, and if he was knowing of the oncoming train he would have stepped aside and not have been struck just as the young lady did? It is urged that a signal might have been given. The purpose of a signal is to give notice. Here deceased knew that the train was approaching and accepted voluntarily a place of danger in endeavoring to flag it to stop. (3) The Boyd case, supra, was fully discussed in Evans v. Central Illinois Railway Company, 289 Mo. 493, 501, it was declared "the act of respondent's husband as shown by the evidence before us in attempting to cross the railroad tracks in broad daylight at a point where he had reason to expect trains at any moment, and where he had an unobstructed view of any train, that might be approaching the crossing without looking for a train or where, if, he had looked he could have seen the train approaching for a distance of three to six hundred feet, constituted negligence on his part that would bar a recovery by his widow in an action based on an allegation of negligence. Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Huggert v. Railroad, 134 Mo. 673; Stotler .v. Railroad, 204 Mo. 619. (4) Paraphrased, the act of the husband in the instant case, seeing and knowing of the approach of the train warned that it would not stop, the warning unheeded; going into, or remaining in a zone of danger in his mad attempt to stop the train, seeing and knowing the situation; unheeding the warning of the one who by one step entered the zone of safety, cannot be declared negligence in law, but must be submitted to the jury. "There can be no recovery of damages under the Humanitarian Rule." (5) Should the court be solicitous for further authority, see Monroe v. Chicago & Alton Railway Co., 297 Mo. 649. There are cases, also, in which one may show himself . . . so heedless of danger as to preclude a recovery as a matter of law, in such case he assumes the risk of injury. These principles are established by numerous decisions of this court. Zimmerman v. Railroad, 71 Mo. 476; Henzr v. Railroad, 71 Mo.

636; Hanlon v. Railroad, 104 Mo. 381; Stepp v. Railroad, 85 Mo. 235; Easley v. Railroad, 113 Mo. 236; Kenney v. Railroad, 105 Mo. 284; Gratiot v. Railroad, 116 Mo. 450; Boyd v. Railroad, 105 Mo. 371; Beal v. St. Louis & San Francisco, 256 S. W. 733. (6) But why multiply authorities. A signal would have done nothing more than advise of the coming of the train, this he knew. There was a platform which the train passed without difficulty, this he knew. From the platform he could have signalled the train in safety, this he knew, and there was the warning of peril by the young lady. There is no evidence in the record that the engineer ever saw him in a position of peril. In fact, a verdict would have been only guesswork, based alone on prejudice and passion.

COX, P. J.—Action for damages for death of plaintiff's husband. At the close of plaintiff's testimony a demurrer thereto was sustained and judgment went against her and she appealed.

The plaintiff's husband was a minister of the gospel living at Elwood, Missouri, a station on defendant's railroad, at which some trains made regular stops and others only stopped when flagged. The deceased purchased a ticket at Elwood to go from there to Rogersville, Missouri. The train on which he sought to take passage did not stop at Elwood except when flagged. The defendant had provided a flag and kept it hanging on a nail on the outside of the depot and it was the custom of persons desiring to take passage on a train to use the flag themselves at their convenience for the purpose of giving notice to the approaching train to stop. On the morning in question a lady who was in charge of the depot and the deceased both stepped to the edge of the track and the flag was used by both in their efforts to stop the train. The train was visible for one-half mile before it reached the station, and at the time the lady and deceased first gave the signal the train was at the whistling post which must have been a long distance from the depot. It was the custom for the engineer to

answer the signal to stop by two short whistles. On this occasion the engineer did not answer the signal and the train kept steadily on at a fast rate of speed without slackening until after the collision. Both the lady and the deceased were standing so near the track that the train could not pass without hitting them unless they moved and that situation must have been apparent to the engineer when the engine was a long distance from them. The parties kept waving the flag and when the train was near them, the lady then had the flag handed it to the deceased and he used it. When the train became very close to them, the lady saw the train was not going to stop and stepped back out of the way and spoke to the deceased and told him that she thought the train would not stop. The deceased made some effort to get back but was too late and the train struck and killed him.

On the facts proven, it was plainly the duty of the engineer to be on the watch for a stop signal at the station at Elwood. He had a clear view of the track and persons on or near the track for one-half mile. When the signal to stop was given, it was his duty to answer it by two short blasts of the whistle and then stop the train. He did neither. He evidently was not looking and did not see the signal or the parties giving it or he wilfully disregarded it. In either case he was guilty of negligence. It must be conceded also that the deceased saw the train approaching and could easily have stepped back so it would not hit him, so he was therefore guilty of contributory negligence. The only question in this case is whether as a matter of law on the facts proven by plaintiff, the humanitarian rule can be applied and whether, under the testimony, the question of liability of defendant under that rule should have been submitted to the jury. We are cited to a great number of cases by appellant which it is insisted hold that under the facts in this case, the question of defendant's liability under the humanitarian rule should have gone to the jury. Appellant's counsel state in their brief that they are relying

solely on the rule announced in Kelley v. The Mo. Pac. Ry. Co., 101 Mo. 67, 13 S. W. 806; Murphy v. Wabash R. R. Co., 228 Mo. 56, 128 S. W. 481; Morgan v. Wabash Ry. Co., 159 Mo. 262, 60 S. W. 195; Frick v. The St. Louis, Kansas City & Northern Ry. Co., 75 Mo. 595; Martin v. St. Louis-San Francisco Ry. Co., 227 S. W. 129; Banks v. Morris & Co., 257 S. W. 482; State ex rel. v. Trimble, 260 S. W. 1000.] We have carefully examined all these cases as well as others and we have found no case which we consider parallel to this case in which a recovery has been upheld. In the Banks case, supra, the atmosphere has been cleared on the question of the necessity to plead and prove that the deceased was oblivious to his danger and it is there held by our Supreme Court that there may be instances in which a party is aware of his danger and may even remain in a place of danger when he could get away from it and still recover under the humanitarian rule, but neither that case nor any other that we have been able to find has held that the engineer who may or ought to have seen a man on or near the track when it is apparent to the engineer that the man sees the train approaching and that he can readily step out of danger is bound to slacken or stop the train until something occurs which will convey information to the engineer that the party does not intend to get out of danger. No matter how negligently the engineer may disregard his duty, yet the company cannot be held liable under the humanitarian rule unless there is a failure on the part of those in charge of the train to use ordinary care to avoid the injury after something has occurred which should convey information to those in charge of the train that the party in danger will not extricate himself.

In this case the deceased stood so near the track in using the flag that the train could not pass without hitting him. Whether the engineer saw him or not, he could and ought to have seen him and we must therefore proceed on the theory that he did see him. While that is true, yet, the engineer had the right to assume that

the deceased would act as an ordinarily prudent man would act in regard to his own safety. The ordinarily prudent man standing on or near the track of a railroad watching a train approach would step out of danger before the train could strike him even though it did not slacken its speed. With nothing to prevent his moving there would be no legal excuse for his not doing so and it is apparent that the deceased in this case could have avoided injury by stepping back after the train was so near him that it would have been impossible to have stopped the train or to have slackened its speed in time to have avoided the collision and, under the facts shown in this case, the engineer could not know that the deceased would not step back in time to have done anything to avoid striking him. We think the trial court was right in sustaining a demurrer to plaintiff's testimony in this case. [Butler v. United Railways Co., 293 Mo. 259, 238 S. W. 1077.]

The judgment will be affirmed. *Bradley, J.,* concurs; *Bailey, J.,* not sitting.