STATE EX REL. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Relator, v. EWING C. BLAND, NICK T. CAVE and SAMUEL A. DEW, Judges of the Kansas City Court of Appeals, PEARL BRESLER, party adversely affected.—No. 39534.—191 S. W. (2d) 660.

Court en Banc, December 3, 1945.

Rehearing Denied, January 8, 1946.

*Charles L. Carr* and *Cooper, Neel, Sutherland & Rogers* for relator.

*White & Hall* for respondent.

ELLISON, J.—Certiorari to the respondent judges of the Kansas City Court of Appeals bringing up for review their opinion and the whole record in Bresler v. K. C. Pub. Serv. Co. under Sec. 10, Art. V, Const. 1945, and our Rule 2.06. The opinion is reported in 186 S. W. (2d) 524, where the facts are fully stated. The action in the circuit court was for damages for personal injuries sustained by the plaintiff as the result of a collision of one of the defendant-relator's streetcars with an automobile wherein she was seated, which at the time was stalled on relator's streetcar track at a cross thoroughfare.

The plaintiff's evidence showed she first saw the approaching streetcar when it was about 823 feet away. This was just after her husband, with whom she was sitting, had stopped the automobile at a warn-

ing sign and then started slowly across the streetcar tracks. Their seven year old twin daughters were in the back seat. The engine "went dead" and the automobile stopped with the back wheels between the rails of the track when the streetcar was 450 feet away. The husband made ineffectual efforts to start again. Plaintiff again saw the streetcar when it was 225 feet away. The motorman was clanging the bell and waiving his arms at them. The streetcar was traveling about 25 miles per hour. She turned toward her children, who had started crying, and did not see the streetcar again. It hit the rear wheel of the automobile and shoved it around 25 feet, the streetcar traveling 45 feet after the collision. At the stated speed it could have been stopped in 45 or 50 feet. The relator's evidence was that the automobile did not stop at the warning sign; that it stalled on the track when the streetcar was 80-100 feet away; and that the motorman did everything possible to avert the collision.

Plaintiff's case was submitted to the jury solely on the humanitarian doctrine. At relator's request the court gave an instruction No. 3, defining "imminent peril." The jury found for the defendant-relator, but the trial court sustained plaintiff's motion for new trial on the ground that the instruction was erroneous. On relator's appeal the respondent judges' opinion affirmed that order. The only issue raised in this review proceeding is whether respondents erred in so ruling and thereby ▮▮▮ contravened our decisions. The instruction was as follows (italics ours):

"The court instructs the jury that the term, 'imminent peril' does not mean remote, uncertain, contingent danger nor, *so far as the plaintiff is concerned, avoidable danger,* but means danger that is immediately impending and that admits of no time for deliberation on the part of the person in peril between its appearance and the impending calamity."

To sustain the instruction, the relator strongly relied in the Court of Appeals, as it does here, on Byrnes v. Poplar Bluff Printing Co., 74 S. W. (2d) 20, 27(9), decided by Div. I in 1934. In that case error was assigned on the refusal of a defendant's instruction defining imminent peril, which respondents' opinion agrees was substantially like the above instruction No. 3 except that the italicised words "so far as plaintiff is concerned" were omitted. The Byrnes decision held the instruction was properly refused because it stated without qualification that imminent peril does not mean *avoidable* danger. That might be true, said the decision, "so far as the plaintiff was concerned," but it does not mean peril which neither the plaintiff nor the defendant could avoid. To conform to that ruling relator inserted the quoted restrictive phrase in the instant instruction.

Relator also stresses Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S. W. (2d) 200, 201(1), where an instruction defined "position of imminent peril" substantially as here, and was

approved by Div. I of this court last April, after respondents' instant opinion had been delivered. It is the only decision expressly sanctioning an *instruction* containing all the recitals included in the present instruction No. 3. But its context may give it a different meaning, and impair its value as a precedent in relator's favor. Three other cases,[1] decided in one or the other of the two Divisions of this court, are cited in which a defendant's instruction defined imminent peril, but in a much more general way than here. And the full definition has been approved as such (not in an instruction) in five cases[2] decided by Div. 2 and in several by the Courts of Appeals. See generally for these cases and others, 20 Words & Phrases (Perm. Ed.), "imminent peril", p. 157.

They all go back to the definition in Judge White's separate concurring opinion in the foundation banc decision of Banks v. Morris & Co., 302 Mo. 254, 273(2), 257 S. W. 482, 486(2), where it was stated that imminent peril: "does not mean remote, uncertain, contingent, nor (for the person affected) avoidable danger. It is imminent, *immediately* impending; it admits of no time for deliberation on the part of the person in peril between its appearance and the impending calamity."

Respondents' opinion first challenges instruction No. 3 as to phraseology and form, saying it is too technical and involved to be understood by a jury of laymen. Then it is suggested that the "imminent peril" mentioned in Judge White's definition really refers to a plaintiff's *apparent* peril as seen or seeable by the defendant, and not to his *actual* peril (if any); and that the instant instruction No. 3 does not make that distinction plain. Speaking of the Byrnes case, supra, respondents observe that although the instant instruction No. 3 satisfies the particular criticism made of the instruction in the Byrnes case, yet that decision did not hold the instruction there was otherwise unexceptionable. Then respondents go further and rule instruction No. 3 was clearly erroneous in substance as well as form—in telling the jury that the plaintiff's peril was not imminent if she could have *avoided* the danger; and they assert the question of contributory negligence was thereby wrongfully injected into the humanitarian case.

---

[1]Wallace v. St. J. Ry. L. H. & P. Co., 336 Mo. 282, 289(3), 77 S. W. (2d) 1011, 1013(3); Branson v. Abernathy Furn. Co., 344 Mo. 1171, 1181(3), 130 S. W. (2d) 562, 567(6); Roach v. K. C: Pub. Serv. Co. (Mo. Div. 1), 141 S. W. (2d) 800, 802(5).

[2]Frailey v. Kurn, 349 Mo. 434, 440(3), 161 S. W. (2d) 424, 428; Baker v. Wood, 142 S. W. (2d) 83, 84(2); Wallace v. St. J. Ry. L. H. & P. Co., supra, 336 Mo. 1. c. 289(3), 77 S. W. (2d) 1. c. 1014; Ridge v. Jones, 335 Mo. 219, 227, 71 S. W. (2d) 713; Ziegelmeier v. St. L.-Sub. Ry. Co., 330 Mo. 1013, 1017(2), 51 S. W. (2d) 1027, 1029(2).

On the main points respondents cite two decisions,[3] both of which in turn are expressly based on the *principal* opinion (by Judge Ragland) in the Banks-Morris case, supra, 302 Mo. l. c. 266-7, 257 S. ▮▮▮ W. l. c. 484-5. So we have this situation. The instant instruction conforms to the definition of imminent peril in Judge White's concurring opinion in that same case and in* at least six subsequent divisional decisions. But respondents maintain the instruction conflicts with Judge Ragland's controlling opinion in the case. The chief point of conflict is that the instruction explicitly says peril is not imminent if the plaintiff can avoid the danger, whereas it is asserted Judge Ragland's opinion declares a plaintiff may be in imminent peril even though he can avoid the danger. The whole humanitarian doctrine is case law, so we must determine the meaning of Judge Ragland's opinion and subsequent interpreting decisions as bearing on these questions. The opinion says:

"'The position of peril' is one of the basic facts of liability; it might be denominated the chief one. . . . It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death."

Then the opinion states a "formula" enumerating the constitutive facts of a cause of action under the humanitarian rule, as follows: "(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured."

Clearly these two quoted paragraphs do not limit imminent peril to *un*avoidable danger, as do the challenged instruction No. 3 and Judge White's definition when the latter say imminent peril does *not* mean peril which is avoidable so far as the plaintiff is concerned. On the contrary, unavoidable peril (inability to extricate one's self) is only one of the four kinds of peril mentioned. Judge Ragland's opinion simply overruled prior cases[4] which had restricted the recog-

---

[3]Hunter v. Fleming (K. C. Ct. App.), 7 S. W. (2d) 749, 751; Tuck v. St. L.-S. F. Ry. Co., 217 Mo. App. 442, 450, 268 S. W. 682, 683(3).

[4]Montague v. Interurban Ry. Co., 305 Mo. 269, 283, 264 S. W. 813, 817(7). A number of the overruled cases are assembled in Perkins v. Term. Rd. Assn., 340 Mo. 868, 897(13), 102 S. W. (2d) 915, 931.

nized causes of peril to obliviousness and inability to escape; and laid down the broad rule that it is of no consequence *what* brings about *or continues* the peril, even though it be sheer hardihood or recklessness. This covers the whole range of self-exposure to peril from mere negligent inattention to utter, audacious and continuing disregard of known and avoidable danger.[5]

Indeed, this court has never yet directly ruled that the injured party (or his statutory claimant) cannot collect damages under the humanitarian doctrine even for self-sought injury or suicide. Judge White's concurring opinion in the Banks-Morris case did negative that theory but no other judge concurred therein. And while five later decisions[6] by Div. I have recognized Judge White's view, they have done so only to the limited extent of saying the doctrine of Judge Ragland's principal opinion is the law (italics ours) "except *perhaps*" when the plaintiff voluntarily seeks injury. Also, the St. Louis Court of Appeals in one case[7] concluded our decisions "*lean* to the idea" that suicide is a defense in a humanitarian case. This is as far as our appellate decisions have gone up to this time.

There is no issue of malingering or suicide in this case. That point and the cases just cited are mentioned only to show the latitude of our humanitarian doctrine is so great, that when the question of a plaintiff's right to recover for self-sought injury has come up as a matter for general construction, our decisions have restricted themselves to the statement that "perhaps" he could not. But in any event, the ruling in the principal opinion in the Banks-Morris case that the cause of the plaintiff's peril is immaterial, even though it be his sheer hardihood or recklessness—that ruling alone is enough to demonstrate that the challenged instruction No. 3 is wrong in saying imminent peril does not mean avoidable danger; for reckless peril obviously could be avoided.

And if, as respondents' opinion suggests, Judge White's definition of imminent peril, as embodied in the challenged instruction No. 3 refers only to the plaintiff's *apparent* peril—that is, his apparent lack of ability or intention to avoid the threatened danger, as seen or seeable by the defendant—then the instruction is obscure and fails to make its meaning clear. Furthermore, the instruction as written is little less than an invitation to a defendant's counsel to argue that

[5]See "sheer" and "hardihood", Webster's New International Dictionary; and "recklessness", 36 Words & Phrases (Perm. Ed.) p. 489.

[6]Zumwalt v. C. & A. Rd. Co. (Mo. Div. 1), 266 S. W. 717, 724(5); McGowan v. Wells, 324 Mo. 652, 663(2), 24 S. W. (2d) 633, 638(3); Grubbs v. K. C. Pub. Serv. Co., 329 Mo. 390, 397(5), 45 S. W. (2d) 71, 74(4); Freeman v. Berberich, 332 Mo. 831, 837(3), 60 S. W. (2d) 393, 395(3); Steger v. Meehan (Mo., Div. 1), 63 S. W. (2d) 109, 112(7).

[7]Cain v. St. L. Pub. Serv. Co., 59 S. W. (2d) 734, 736-7(4).

876

the plaintiff could have "avoided" the danger if he had not been guilty of contributory negligence, which argument would be improper.

For the reasons just stated, our writ of certiorari is quashed and the judgment of the circuit court affirmed. All concur.