**L. M. WYCKOFF, Respondent,**

v.

**W. L. DAVIS, Appellant.**

No. 45363.

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1957.

Robert L. Ewing, A. E. Elliott, Nevada, Mo., for appellant.

Jack P. Pritchard, Donald B. Russell, Pritchard & Russell, Nevada, Mo., for respondent.

HOLMAN, Commissioner.

Action for damages arising out of an intersectional collision between plaintiff's pickup truck and defendant's automobile. In the first count of his petition plaintiff sought to recover for his personal injuries and the damage to his truck, and in the second count for the death of his eleven-year-old son, Wayne Wyckoff. Defendant filed a counterclaim in which a recovery was sought for the damage to his car and the loss of services of his wife by reason of injuries received in the collision. The jury returned a verdict for plaintiff on his petition in the sum of $4,000 on the first count and $8,000 on the second count, and the verdict was also for plaintiff on the counterclaim of defendant. From the ensuing judgment defendant has duly appealed.

Plaintiff alleged and submitted his claim solely upon humanitarian negligence of defendant in failing to stop or swerve his automobile and thus avoid the collision. Since defendant contends that plaintiff failed to make a submissible case we will state the evidence in some detail. It may also be noted that defendant contends that the death of the minor child did not result from the collision and hence, in any event, there could be no recovery on the second count.

Plaintiff was the only surviving parent of Wayne Wyckoff who died on April 17, 1954. It appears that Wayne and a younger brother were preparing to ride two horses that were kept in a lot near the barn at

plaintiff's farm located about 15 miles from Nevada, Missouri. Shortly after 7 a.m. on that date, plaintiff and his 18-year-old son William were in the barn milking when another son (eight or nine years old) ran into the barn shouting that Wayne had been hurt. The boy later stated that a horse had fallen on Wayne. Plaintiff and William found Wayne lying on the ground unconscious with a gash on his forehead. They immediately carried him to plaintiff's pickup truck and started for the hospital in Nevada with William driving and plaintiff holding the boy in his arms. Plaintiff instructed William to drive as fast as he dared, but to watch everything. William drove the truck at speeds ranging from 45 to 70 miles an hour until they reached the city limits of Nevada. He proceeded in the city at a speed of from 40 to 45 miles an hour apparently sounding the horn continuously.

The collision occurred at the intersection of Adams and Maple Streets. Each of these paved streets is 30 feet wide and there is no stop sign for traffic coming from any direction. The truck was proceeding south on Adams and defendant's automobile was traveling west on Maple. William testified that when the truck was from 100 to 125 feet from Maple he saw defendant's automobile 40 or 45 feet from Adams and estimated that it was going 15 or 20 miles per hour. He said it looked like the other car was going to stop and "I just kept on going." He stated further that defendant did not stop but proceeded into the intersection and the car struck the truck right under the door on the left side which caused the pickup truck to turn over two or three times, coming to rest from 85 to 100 feet south of the south line of Maple Street. According to this witness, the collision occurred about 6 feet west of the center line of Adams and 6 feet south of the center of Maple. As a result of the collision William was thrown out of the truck but his father and Wayne remained in the cab until the truck came to rest. The father handed Wayne to William through

a broken windshield and was then able to get out himself. They started on foot for the hospital which was a short distance away, but a woman living nearby, upon request, drove them to the hospital, first, however, according to William and his father, going into the house and getting some papers so as to keep the blood from getting on the inside of her car. They arrived at the hospital from 7 to 10 minutes after the collision. The boy was immediately examined by a nurse who testified that she could find no pulse nor hear any heartbeat. A few minutes later (estimated from 7 to 10), Dr. Wray examined Wayne and stated that he was dead. The doctor then examined plaintiff and found that he had a bump on the side of his head, multiple bruises, and a simple fracture of the small bone of the right leg. He was hospitalized and treated for these injuries.

In his effort to establish humanitarian negligence, plaintiff offered portions of defendant's deposition in which he said that his car was equipped with "fine brakes" and that he had slowed down before crossing this intersection and put his car into low gear and was proceeding at 3 miles per hour and could stop in 3 feet. In this connection we state further that defendant, 77 years old at time of accident, testified in his own behalf and, in addition to the foregoing, stated that he saw the truck when it was "no less than a block away" and that it looked like he had plenty of time to cross, so he started to "ease" across Adams with his foot on the brake and when his wife exclaimed, "There is a car," he put on the brake and stopped instantly before reaching the center line of Adams and was then hit by the truck. His wife testified that when he started across the intersection the car was "just creeping."

On the issue of the cause of the death of Wayne Wyckoff, plaintiff testified that the boy was warm and breathing throughout the trip to Nevada; that he was not bleeding much and there were no broken bones visible and he saw no brain tissue; that he looked at Wayne after they started

south on Adams Street and he was still breathing; that when the truck rolled over several times he had Wayne in his arms and could not hold onto anything so he and Wayne rolled around in the cab "every which way."

Dr. Wray stated that he examined Wayne's body shortly after arrival at the hospital and testified, for the defendant, that the boy had a split across the frontal scalp with a compound fracture of the skull; that the left eye was partly evulsed; that there was some brain tissue showing but no fresh bleeding; he estimated that the boy had been dead from 15 to 30 minutes and stated that he was of the opinion that the collision had no relationship with his death; that he made no tests to determine how long Wayne had been dead but based his estimate on observation and experience. It would appear that other than listening for the heartbeat neither Dr. Wray nor the nurse examined any other part of Wayne's body.

Defendant also presented two policemen and a nurse, all of whom testified that while plaintiff was in the X-ray room he stated to one of the officers that "he wanted it distinctly understood that the accident had nothing to do with the death of the boy." Plaintiff stated that he did not remember making such a statement and that his only recollection of talking to the police was that he was attempting to explain why William had been exceeding the speed limit (30 m. p. h.) at the time of the collision.

In rebuttal plaintiff stated that Wayne's eye was not evulsed prior to the collision. Plaintiff also presented Dr. Lepi, a physician specializing as a pathologist, who testified to various methods of determining how long a body had been dead and then, in answer to a hypothetical question, stated that Dr. Wray could not possibly, at the time of his examination, have determined with accuracy that the time of Wayne's death was within 30 minutes. He also stated that the child, being held with his face up, would not have bled during the trip to the hospital if he had been dead.

■ We think it is apparent from the foregoing that plaintiff made a submissible case of humanitarian negligence against the defendant. The contention of defendant that plaintiff failed to prove a case beyond conjecture or surmise is without merit. Viewing the evidence in the light most favorable to plaintiff we must conclude that after his truck turned south on Adams Street it was driven at a constant and undiminishing speed of 45 m. p. h. with the horn being sounded continuously. As the truck approached the intersection it should have been obvious to anyone that the driver was dominated by a fixed intent to proceed across that intersection without stopping or reducing the speed thereof. On the other hand, the defendant's car, at that time, was "creeping" across the intersection in low gear at a speed of three m. p. h., equipped with "fine brakes," so that it could have been stopped in three feet. Defendant saw the truck when it was at least a block away and he is charged with knowledge of its movement thereafter. He drove his car into the intersection for a distance of 21 feet before reaching the point of impact. Certainly, from a consideration of this evidence, a jury could reasonably have found that at some time while defendant was traveling the first 17 feet of his course across the intersection, he, in the exercise of the highest degree of care, should have discovered that plaintiff was in a position of imminent peril of being struck by defendant's car so that defendant admittedly could have thereafter stopped short of the point of impact. Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254; Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915; Power v. Frischer, 229 Mo.App. 1056, 87 S.W.2d 692. In support of his contention defendant has cited Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, and Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, but these cases involve quite different factual situations and hence are not applicable.

■ Defendant also contends that plaintiff cannot recover under the humanitarian theory because he was at all times conscious of the movement of defendant's car and therefore took the risk of a collision. Some of our cases have stated a rule to the effect that if the injured party knowingly placed himself in the line of danger he should not be permitted to recover in a humanitarian case any more than he should in a case based on primary negligence. However, the difficulty with defendant's position is that the rule upon which he relies is no longer followed in this state. We recently stated, "It has been carefully pointed out that the principal opinion in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, overruled prior cases which had restricted the recognized causes of peril to obliviousness and *inability to escape* 'and laid down the broad rule that it is of no consequence *what* brings about *or continues* the peril, even though it be sheer hardihood or recklessness. This covers the whole range of self-exposure to peril from mere negligent inattention to utter, audacious and continuing disregard of known and avoidable danger.' State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 868, 875, 191 S.W.2d 660, 662." Dwinell v. Thompson, Mo.Sup., 243 S.W.2d 988, 990, 991. We accordingly rule this assignment against the defendant.

■ Defendant next contends that plaintiff failed to make a submissible case on Count II in that he failed to prove that the death of Wayne was caused by the collision of plaintiff's truck and defendant's automobile. It is said that "the most the evidence shows is that Wayne died either as a result of the injuries at the farm or of the inferred injuries received in the collision, but of which set of injuries can only be a matter of conjecture." Defendant relies on the rule that "If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result;

and, if the evidence leaves it to conjecture, the plaintiff must fail in his action." Warner v. St. Louis & M. R. R. Co., 178 Mo. 125, 134, 77 S.W. 67, 70. See also, Smart v. Kansas City, 91 Mo.App. 586; Hamilton v. St. Louis-San Francisco Ry. Co., 318 Mo. 123, 300 S.W. 787. While the foregoing rule is well established in this state it is explained and perhaps limited by the uniform holding that "plaintiff's evidence need not exclude the *possibility* of accident or of a cause for which defendant is not liable, but it is sufficient to make a submissible case if there is substantial evidence that the injury resulted from a cause for which defendant is liable." State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S.W.2d 97, 102; American Vet. Lab. v. Glidden Co., 227 Mo.App. 799, 59 S.W.2d 53; Beaber v. Kurn, 231 Mo.App. 22, 91 S.W.2d 70.

Viewing the evidence in the light most favorable to plaintiff we find nothing (other than plaintiff's apparent fear and anxiety) to indicate that the injuries received by Wayne at the farm would have been fatal. He had a gash on his forehead and became unconscious. However, any fracture of the skull was apparently not a compound one as plaintiff saw no broken bones and no brain tissue. Wayne was alive and breathing without difficulty when plaintiff looked at him just before the collision. It is true that plaintiff was greatly concerned about the condition of Wayne and this no doubt caused him to make the statement to William to "keep driving on so we can make it, get there in time to try to save him." However, under the circumstances, we do not attach any conclusive effect to that statement. Plaintiff's fear and anxiety was a natural parental reaction. Admittedly, his son had received a serious injury, the full extent and consequence of which was unknown to plaintiff, and he knew that prompt medical and hospital care might be necessary in order to save Wayne's life.

The instant collision caused the truck to turn over two or three times with plaintiff and Wayne rolling around in the cab.

There is evidence that Wayne bled following this occurrence. When examined a few minutes thereafter he was dead. At that time he had a compound fracture of the skull (with brain tissue showing) and his left eye was partly evulsed. According to plaintiff these conditions did not exist prior to the collision.

■ As we have stated, the evidence does not indicate that the injuries which Wayne received at the farm were such as would likely cause his death. On the contrary, however, the injuries disclosed by an examination of the body after the collision were much more serious and were such as would often result in death. It would also seem significant that the boy remained alive from the time of the farm accident until the collision occurred and then died very shortly thereafter. We therefore have concluded that plaintiff presented sufficient substantial evidence to indicate with reasonable certainty that Wayne died as a result of the injuries received in the collision. It follows that the trial court did not err in overruling the defendant's motions for a directed verdict on Count II.

■ The contention is also made that the court erred in giving plaintiff's Instruction No. 3 which submitted the issue of liability for the death of Wayne. It hypothesized, in part, that if the jury found that "Wayne Wyckoff was riding in plaintiff's Chevrolet pickup truck, and that the same was struck by defendant's Chevrolet sedan at and upon the intersection of Adams and Maple Streets in the City of Nevada, Missouri, and that as said Wayne Wyckoff approached the path of defendant's automobile he came into and was in a position of imminent peril of being struck by defendant's automobile, and that said Wayne Wyckoff was unable to extricate himself from such position of imminent peril, and if you further find and believe from the evidence that after said Wayne Wyckoff entered said place of imminent peril, defendant * * * saw or by the exercise

of the highest degree of care could have seen said Wayne Wyckoff in a position of imminent peril of being injured, in time" etc. Defendant suggests a number of errors in the instruction. First, it is said that it ignores the question of plaintiff's contributory negligence, it being asserted that a parent cannot recover for the death of a minor child if the acts of the parent caused or contributed to cause the fatal occurrence. The cases cited are primary negligence cases and, of course, would have no application to the instant case which was submitted solely on the humanitarian theory and wherein contributory negligence is no defense.

It is also stated that the instruction erroneously submitted the inextricable peril of Wayne Wyckoff when, in fact, plaintiff had caused the unconscious youth to be brought into the position of peril and hence the instruction should have submitted the ability of plaintiff (rather than Wayne himself) to have removed Wayne from the position of peril. We need not develop this point to any extent as we have already held that inextricability is not an essential element of plaintiff's recovery in this case. It would therefore appear that the questioned submission may either be disregarded as surplusage or regarded as having placed a greater burden on plaintiff than was required. In this situation it would seem that no prejudicial error is demonstrated. Moreover, we see no merit in the additional claim that the instruction conflicts with defendant's sole cause Instruction No. 9. That instruction directed a verdict for defendant if the jury found that the collision was caused solely by certain described acts of negligence on the part of William while operating the truck as agent for plaintiff and that defendant was not negligent in any respect. We find no conflict between this and the submission of defendant's humanitarian negligence in Instruction No. 3.

■ The further suggestion is made that the instruction is erroneous because

it gave no guide to the jury as to when Wayne came into a position of peril and hence it constituted a roving commission in that respect. When a person comes into and is in a position of imminent peril is a question for the jury to determine under the evidence of the particular case. Under the exact facts of the instant case we do not think the instruction was required to limit the zone of imminent peril to any specific time or place during the approach of the truck to the intersection. While plaintiff and William were not oblivious, it was apparent from the speed and manner the truck was proceeding that it was not going to stop before reaching the intersection. It is the reasonable appearances of the situation that imposes the duty to act and this rule applies where the other party is not oblivious as well as where he is. Hayes v. Coca-Cola Bottling Co. of St. Louis, Mo. Sup., 269 S.W.2d 639. Moreover, it should be noted that the instruction did not contain any misstatement as to where a position of imminent peril began or use language which would make it likely that the jury would find that Wayne was in a position of imminent peril at a time and place when he could not have been. In these circumstances it was proper for the jury to determine the time and place he came into imminent peril. Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519.

Defendant also contends that the court erred in giving plaintiff's Instruction No. 1 which submitted the issue of defendant's liability to plaintiff for his personal injuries and property damage. This instruction is very similar to Instruction No. 3 except that the word "plaintiff" is substituted for "Wayne Wyckoff" and, after directing a verdict for plaintiff, it concludes with the clause (not in No. 3), "and this is true even though you may further find and believe from the evidence that plaintiff, L. M. Wyckoff, was negligent in getting his said Chevrolet pickup truck in the aforesaid position of imminent peril, if any." Some of the complaints against this instruction are substantially the same as those we considered in connection with Instruction No. 3. Additionally, it is urged that the concluding clause or "tail" on this instruction was error because it ignored the defense of sole cause. We are unable to see how this alleged omission could be prejudicial. As a condition of recovery the instruction required the jury to find that defendant was negligent in failing to stop or swerve his car and thus avert the collision. If he was thus negligent it would have been impossible for any negligence of plaintiff to have been the *sole* cause of the collision. Likewise, the sole cause instruction required the jury to find that defendant was not negligent in any respect. There is no conflict and we think the jury could not have understood that the "tail" on the instant instruction would eliminate the sole cause defense. In support of this contention defendant relies on the case of Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, wherein, under a factual situation much different from that in the case before us, it was said that a somewhat similar "tail" would conflict with a proper sole cause submission. However, the Smithers case has been distinguished from cases such as the instant one and does not support defendant's contention herein. See Peterson v. Tiona, Mo.Sup., 292 S.W.2d 581; State ev rel. Snider v. Shain, 345 Mo. 950, 137 S.W.2d 527; Bowman v. Standard Oil Co., 350 Mo. 958, 169 S.W.2d 384. The instruction in the case last cited involved almost precisely the same language as that contained in the clause under consideration and it was therein held not to be erroneous.

Defendant further asserts that said Instruction No. 1 was misleading in that it ignored the fact that William Wyckoff was driving the truck and did not require a finding that plaintiff was in the truck. This contention is not meritorious. Defendant in his answer specifically admitted these facts. It is not error to omit conceded facts from an instruction. Bowers v. Kansas City Public Service Co., 328 Mo.

770, 41 S.W.2d 810. Under the circumstances we are unable to see how the jury could have been misled by the failure of the instruction to specifically hypothesize these assumed and admitted facts.

Finally, defendant complains of error in the admission of certain testimony of William Wyckoff. Over the objection of defendant, William was permitted to state that he had not examined the truck on the day of the collision but had seen it at the garage about two or three weeks thereafter and that there was blood all over the dash and on the inside of the right door. It is urged that this evidence was inadmissible because of the time that had elapsed before the inspection and because William was not shown to be qualified to identify a substance as blood, particularly if the substance was two or three weeks old. No authority is cited in support of this contention. However, we have concluded that we need not actually decide this question. This for the reason that we are convinced that the admission of that testimony did not materially affect the merits of this action. Section 512.160 subd. 2 RSMo 1949, V.A. M.S. It is apparent that plaintiff offered this evidence in an effort to show that Wayne bled during the time he was in the truck, as there was other evidence that neither William nor plaintiff received injuries in the collision from which they bled. Since plaintiff and William each testified to facts indicating that Wayne was bleeding, both before and shortly after the collision, we think the admission of the additional evidence complained of would not, in any event, be prejudicial.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.