STATE OF MISSOURI at the relation of ADA ALSUP, Administratrix of the Estate of MARY ALSUP, Relator, v. W. D. TATLOW, ROBERT J. SMITH and JAMES F. FULBRIGHT, Judges of the Springfield Court of Appeals.—144 S. W. (2d) 140.

Court en Banc, November 9, 1940.

*R. Kip Briney* and *Lawrence E. Tedrick* for relator.

1026

*Langdon R. Jones* for respondents.

GANTT, J.—Relator seeks to have quashed the opinion of the Springfield Court of Appeals in Alsup, Admrx. of the Estate of Mary Alsup, v. Henwood, Trustee of the Southwestern Ry. Co., 137 S. W. (2d) 586. It reversed a judgment for plaintiff for the killing of Mary Alsup by defendant's train at a country public crossing on July 23, 1938, at six P. M. The case was submitted to the jury on failure to warn under the humanitarian rule.

The answer alleged that the deceased "failed to exercise her faculties of sight and hearing, which, had she exercised either of same, would have disclosed to her the approach of defendant's train."

The Court of Appeals ruled that the trial court should have directed a verdict for defendant. From the opinion, the facts may be stated as follows:

In this locality a farm-to-market road crosses the railroad, which runs northeast and southwest, at almost right angles. For a long distance on either side of the crossing the track is straight, the land level and there are no obstructions to the view of either pedestrians or trainmen approaching the crossing. For many years the deceased lived in a house eight hundred forty-five feet east of the crossing. She was seventy-three years of age, of good sight and hearing, very active, enjoyed walking, frequently visited neighbors, and was familiar with the crossing. On the day of the injury she visited a neighbor who lived four hundred fifty feet west of the crossing. At about six P. M. she left for home, carrying an open umbrella "leaning back over her shoulder" and proceeded eastward toward the crossing. The evidence for plaintiff tended to show that she walked at an ordinary gait up to and upon the track. The engineer testified that he was on the right-hand side and did not see the deceased until she was struck by the engine. "The fireman testified that he was on the left-hand side of the engine and saw the deceased walking toward the crossing at an ordinary gait until she got close to the tracks and that she stopped and looked at the train and started faster and tried to cross in front of the engine and got caught just before she passed the right-hand side of the engine." The opinion states no evidence tending to show how far the deceased was from the track when the

fireman first saw her. There was evidence tending to show no warning by either bell or whistle.

In ruling the demurrer the Court of Appeals made statements as follows:

"It is an established rule that the place of peril, or the limits within which a person reaches the place of peril, varies, and that there is a marked difference between the limits of the place of peril for a pedestrian crossing a railroad track to the limits of a person riding in an automobile or in a conveyance pulled by horses.

"A pedestrian knows that a railroad track is of itself a warning of danger. A pedestrian walking in an ordinary gait, and possessed of the faculties of seeing and hearing is presumed to have seen and heard an approaching train, and especially so on a level plane in every direction with no obstructions of any kind. There must in every case under the humanitarian rule be some evidence of obliviousness to danger. In this, and in every case of similar nature, there must be some evidence that the person injured did not see the train, and was not going to stop before entering into the zone of peril. This must be shown to overcome the presumption that the pedestrian was looking and saw the track and saw and heard the approaching train. It is but the natural presumption that if the bell had been rung and the whistle blown, and the noise of the oncoming train had been heard, that a pedestrian would walk up to within a few feet of the track before stopping. And as we view it, the pedestrian would not be in a place of peril until passing that danger line, and as we understand the rule under the humanitarian doctrine, no duty arises on the part of the trainmen to do anything until and unless there is some evidence that the pedestrian has passed into the danger zone, or something is shown to indicate that there is an intention to enter the danger zone. There is not a particle of testimony offered by anyone to indicate that the deceased did not intend to stop, except that of the fireman who said that she stopped, looked at the train and ran across in front of the train. We are not unmindful of the fact that we must take the plaintiff's evidence as being true for the purpose of passing on the demurrer, and in taking that as true in this instance, it shows that a person with reasonable vision and hearing was walking toward a railroad crossing with not a particle of evidence that she was oblivious to danger (or that she was in a place of peril), or that the fireman, who was looking right toward her, saw her in a place of peril in time to have in any way prevented the accident."

Relator contends that the Court of Appeals ruled the demurrer on the theory that there was no evidence tending to show that deceased was oblivious, and that said ruling is in conflict with decisions of this court as follows: Crockett v. K. C. Ry. Co., 243 S. W. 902;

McKenzie v. United Rys., 216 Mo. 1, 115 S. W. 13, and Lynch v. C. & A. Ry. Co., 208 Mo. 1, 106 S. W. 68.

Those cases ruled that an allegation in an answer similar to the allegation in the answer in this case is an admission of obliviousness.

It will be noted that only a small part of the above statement of the Court of Appeals is necessary in ruling the demurrer. The answer admits obliviousness at the time the deceased entered the danger zone. We do not understand the opinion to rule contrary to this admission. We think it ruled that there was nothing in the conduct of the deceased as she approached the crossing which indicated to the fireman that she would not walk within a few feet of the track and wait for the train to pass. It further ruled that the fireman was authorized to assume that she would do so. It further ruled that her failure to do so left the trainman without sufficient time to give warning before she walked upon the track. There is no conflict with the above cited cases, and the writ should be quashed. It is so ordered. All concur.