JOHN MARCZUK v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 39784.—196 S. W. (2d) 1000.

Division Two, October 14, 1946.

*Mattingly, Berthold, Jones & Richards* and *Douglas H. Jones* for appellant.

538

*Everett Hullverson* and *Albert I. Harris* for respondent; *Orville Richardson* of counsel.

540

BARRETT, C.—On the 25th of February, 1945, John Marczuk left a Park Avenue streetcar at 18th and Pine Streets, intending to catch another car and ride to the City Hall. Another car did not come along immediately and he walked down to Olive Street to catch a Forest Park car. But, instead of crossing 18th Street in the intersection, he crossed Olive Street and about 100 feet south of the intersection walked around the rear of a streetcar stopped on the east track and was struck by a southbound streetcar as he crossed the west track on 18th Street. For his resulting injuries he was awarded a judgment of $18,000.00 against the St. Louis Public Service Company. Marczuk's case was submitted to the jury upon the humanitarian doctrine and the assignment of primary negligence that the Public Service Company had violated an ordinance of the City of St. Louis which provided that when a streetcar ''is about to pass another car going in the opposite direction, at a point where it is permissible to passengers to alight from or to board a car, said car shall proceed at a rate of speed not over three miles an hour, and . . . shall ring a warning gong or bell.''

Upon this appeal the St. Louis Public Service Company contends, first, that as to the humanitarian doctrine there was a total failure of proof and, therefore, no liability under that doctrine. It is argued that Marczuk failed to prove the speed of the car or that it could have been stopped after he came into a position of peril. It is said that Marczuk saw the streetcar, knew it was coming down 18th Street, and, therefore, he was not entitled to a warning or to a submission of his humanitarian case upon the theory that he was or that he was either in peril or oblivious. It is contended that he was not oblivious and so could extricate himself from the peril of the oncoming streetcar by stopping in a place of safety, a step or two east of the southbound car and the west track. It is claimed, since Marczuk knew the car was coming, that there was no evidence as to when his peril arose and, in any event, there was no duty to warn him until his imminent peril was made to appear. It is urged that he was not in imminent peril until he reached a point three to six feet from the southbound track and thereafter, under the evidence, the streetcar could not be stopped in time to avoid striking him.

It follows as of course if any of these things are made to appear from the record that Marczuk's case was erroneously submitted under the humanitarian doctrine. It has become axiomatic, under the humanitarian doctrine, that the evidence must show the plaintiff to

have been in a position of imminent peril; but if it does he is entitled, subject to but slight limitations, to a submission of his case regardless of what brought the peril about or caused it to continue, certainly so if it is oblivious peril. State ex rel. Kansas City Pub. Serv. Co. v. Bland, 354 Mo. 868, 191 S. W. (2d) 660, 662. To further illustrate, if the plaintiff relies upon and there is evidence of oblivious peril the evidence must also show not only ability to stop or to slacken speed but also that had the defendant stopped or slackened speed the casualty would have been avoided. State ex rel. Baldwin v. Shain (Mo.), 125 S. W. (2d) 41. Nor is the plaintiff entitled to rely upon a duty to warn when the evidence shows that he was not oblivious. State ex rel. Alsup v. Tatlow, 346 Mo. 1025, 144 S. W. (2d) 140; Schall v. United Rys. Co. (Mo.), 212 S. W. 890.

But the fact that the plaintiff once saw the streetcar does not prevent him from thereafter obliviously coming into a position of imminent peril and if all the other elements of the doctrine are made to appear he is entitled to a submission of his case under the humanitarian doctrine. McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633; Crews v. Kansas City Pub. Serv. Co., 341 Mo. 1090, 111 S. W. (2d) 54. While the northbound car was stopped on the east tracks there was an automobile stopped ahead of it at the crossing. Marczuk testified that he started across the street "about ten feet" to the rear of the standing car and when he was on the west rail of the northbound tracks, for the first time, saw the southbound car which was then in the middle of Olive Street "going real slow." He then proceeded on across the tracks but did not see the southbound car again until he was on the west rail of the southbound tracks when the car was but four or five feet away. The streetcar had an over-hang of about two feet and the west side of the car hit him, "if he had six more inches he could have gotten away." He stated that he "walked across the tracks normally." So when he first saw the southbound streetcar in the middle of Olive Street moving slowly it was the distance of the standing streetcar, plus the length of the automobile, plus his ten feet to the rear of the car and plus the middle of Olive Street away, certainly ninety feet distant. The motorman said that he crossed the intersection at a speed of five or six miles an hour and that when he first saw the plaintiff six or eight feet away he was between the rails of the northbound track running towards the west, that "he never did stop at any time" and was "looking away from me," "he was looking straight west." The motorman said that he stopped the streetcar in "about eight or ten feet." Here Marczuk's attention was not diverted from the streetcar by an automobile or some other occurrence but as he proceeded towards the southbound tracks he was in the zone of danger or peril when it became or reasonably should have become apparent to the motorman that it was Marczuk's fixed intention to enter upon and cross the southbound tracks. Kent v.

Kiel (Mo. App.), 97 S. W. (2d) 885; Bode v. Wells, 322 Mo. 386, 15 S. W. (2d) 335; Diel v. St. Louis Pub. Serv. Co. (Mo. App.), 192 S. W. (2d) 608. Even at six or eight feet from the tracks, as the motorman said, running towards them and looking straight west, he was in peril. Stout v. Kansas City Pub. Serv. Co. (Mo. App.), 17 S. W. (2d) 363. Marczuk did not continuously watch the car as it approached but first saw it in the middle of Olive Street and again saw it when it was but four or five feet away and was, during all that time, so far as appears within range of the motorman's vision and though he once saw the car and was aware of its approach, yet the jury could reasonably find that in between the time he first and last saw it he was not aware of any immediate danger to himself and was therefore oblivious. Maher v. St. Louis Pub. Serv. Co. (Mo. App.), 53 S. W. (2d) 1099; Epstein v. Kansas City Pub. Serv. Co. (Mo. App.), 78 S. W. (2d) 534; Zlotnikoff v. Wells, 220 Mo. App. 869, 295 S. W. 129.

That there was a duty on the appellant to keep a lookout is not even disputed. Crews v. Kansas City Pub. Serv. Co., supra. It is only claimed that he was not entitled to a warning bell because he was aware of the approach of the car but, as we have just pointed out, there was evidence from which the jury could find that he came into a position of imminent peril and was oblivious, in the sense of unawareness of danger, after and even though he once saw the car and was or should have been aware of its approach. McGowan v. Wells, supra. Under these circumstances, there being evidence of obliviousness, he was entitled to a warning, which he claimed he did not receive. McNulty v. St. Louis Pub. Serv. Co. (Mo. App.), 60 S. W. (2d) 701, 702; Epstein v. Kansas City Pub. Serv. Co., 78 S. W. (2d) l. c. 535.

The motorman says that Marczuk was "six or eight feet away on the left in the northbound track—middle of the northbound track" the very first time he saw him. He says that Marczuk "was running from eight to ten miles an hour" and was hit by the right front corner of the streetcar, about twelve inches west of the headlight. Marczuk testified, however, that he was walking at a normal gait and, in view of the jury's finding, we accept his version of that fact. So, the plaintiff walking at a normal speed of two or three miles an hour traveled the distance (after the motorman saw him) between the tracks or five feet, half the distance of the northbound track and at least half the distance of the southbound track while the streetcar at six miles an hour, according to the motorman, traveled twice that distance, certainly a minimum of eighteen feet. Or, accepting again the motorman's statement that Marczuk traveled six or eight feet and Marczuk's statement that he was walking, the streetcar traveled, at five or six miles an hour, at least twice the distance Marczuk walked. The motorman testified that he actually did stop "about eight or ten feet

from the point of the accident." Under these figures, and they are not the maximum permitted by the evidence most favorable to the plaintiff, the jury could reasonably find the speed of the streetcar and its ability to stop—let alone its ability to slacken speed for the needed six inches of safety—after Marczuk came into oblivious peril. Hoodenpyle v. Wells (Mo. App.), 10 S. W. (2d) 331, 333; Zlotnikoff v. Wells, 220 Mo. App. l. c. 875, 295 S. W. l. c. 131; McGowan v. Wells, 324 Mo. l. c. 666, 24 S. W. (2d) l. c. 639.

Without further illustrating from the facts it is our view, so far as the humanitarian doctrine is concerned, that Marczuk's case is almost identical upon the facts and the applicable rules with Zlotnikoff v. Wells, and Epstein v. Kansas City Pub. Serv. Co., supra. Except for the elements of the pedestrian's attention being diverted from the streetcar, the motorman's notice that the pedestrian intended to board the oncoming car or was crossing the street in the proper place his case is quite similar to Kent v. Kiel; McGowan v. Wells; Hoodenpyle v. Wells; Maher v. St. Louis Pub. Serv. Co.; Stout v. Kansas City Pub. Serv. Co., Schimmelpfenning v. Wells (Mo. App.), 24 S. W. (2d) 154 and Wilson v. Wells, 321 Mo. 929, 13 S. W. (2d) 541.

██ The Public Service Company further contends, as to the humanitarian doctrine, that Marczuk's entire case was erroneously based upon the antecedent negligence of failure to maintain a vigilant watch or in operating the streetcar at a speed in excess of three miles an hour. An examination of the record reveals, however, that his humanitarian case was not hypothesized by his instructions upon a violation of the three mile ordinance. Furthermore, the appellant does not object to the respondent's instructions on this score nor does it claim that the evidence shows that the respondent's humanitarian case was made or dependent upon acts of antecedent negligence alone. The appellant cites the well-known cases stating that one may not rely upon antecedent negligence to establish liability under the humanitarian doctrine (Chastain v. Winton, 347 Mo. 1211, 1220, 152 S. W. (2d) 165, 169) and presents the rather novel contention that the trial court erroneously permitted counsel to argue antecedent negligence in the presentation of his case to the jury. Aside from what we have already indicated with respect to the appellant's duty to maintain a vigilant watch and aside from the fact that but a fragment of counsel's argument has been preserved (Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. (2d) 115) and that no such objections were made to the argument at the time (the objection was "I object to that because it is not in the case) we do not think counsel's argument necessarily susceptible to the construction the appellant puts on it, that is, that he argued acts of antecedent negligence in persuading the jury that he had made a humanitarian case. In any event, as was said of a successful defendant's argument, "counsel had the

right to argue the evidence, most favorable to defendants, as to when and where plaintiff's position of imminent peril began. Defendants were arguing that plaintiff was in no peril from the freight train, so far away and moving so slowly, even if he stopped on the track upon which it was approaching, and that its presence could not extend the zone of imminent peril. Plaintiff says that his obliviousness was admitted and was not an issue. However, the question of when his obliviousness would become reasonably apparent to the fireman, on the passenger engine, was the decisive issue because that determined when the fireman's duty to plaintiff commenced.'' Poague v. Kurn, 346 Mo. 153, 166, 140 S. W. (2d) 13, 20.

█ It is also contended, in this connection, that the court erred in refusing the appellant's instruction C withdrawing from the jury's consideration the assignment of primary negligence that the appellant was guilty of violating the vigilant watch ordinance of the City of St. Louis. Though the respondent pleaded a violation of the ordinance as negligence, he did not submit its violation as an act of primary negligence. Vigilant watch was hypothesized, however, in the respondent's humanitarian instruction but it is not now contended that the humanitarian instruction improperly commingled acts of primary negligence and acts of humanitarian negligence or that the instruction failed to limit the duty to watch to the time after Marczuk came into peril as was the case in Bebout v. Kurn, 348 Mo. 501, 154 S. W. (2d) 120; Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116 and White v. Kansas City Pub. Serv. Co., 347 Mo. 895, 149 S. W. (2d) 375. It is contended here that there was no evidence of violation of the vigilant watch ordinance and that the court erroneously permitted counsel to argue a violation of the ordinance. In addition to what we have just said on this subject it may also be pointed out that the motorman indicated that there was nothing to prevent his seeing Marczuk as soon as he was visible. His excuse was ''when I saw him he was too close.'' He testified that he was required to keep a vigilant watch and that he was familiar █ with the fact that many people walked from behind streetcars, even to the doubtful fact that it occurred thousands of times a week. In these circumstances there was a duty upon the motorman, regardless of the ordinance (Chervek v. St. Louis Pub. Serv. Co. (Mo. App.), 173 S. W. (2d) 599), to maintain a vigilant watch for those who might enter upon the tracks (Schroeder v. Wells, 310 Mo. 642, 276 S. W. 60; Illinois Ter. R. v. Feltrop, 130 F. (2d) 982) and whether that duty was performed was properly arguable upon the issue of Marczuk's discoverable peril (Crews v. Kansas City Pub. Serv. Co., 341 Mo. l. c. 1099, 111 S. W. (2d) l. c. 57, 58; Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 91, 85 S. W. (2d) 116, 123) and there was no abuse of discretion in the court's refusal of the instruction withdraw-

ing this unsubmitted assignment of primary negligence. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S. W. (2d) 601, 608.

As stated in the beginning, the respondent did hypothesize, in addition to the humanitarian doctrine, the appellant's liability upon the primary assignment of a violation of the three mile an hour passing ordinance of the City of St. Louis. With respect to this act of negligence, the appellant does not claim that the respondent was guilty of contributory negligence as a matter of law. Zlotnikoff v. Wells, 220 Mo. App. l. c. 874, 295 S. W. l. c. 131. The appellant contends with respect to this ordinance that there was no evidence of its violation and, in any event that it is unconstitutional, unreasonable, unintelligible, against the interests of the public and was not applicable to Marczuk because he was neither a passenger on the car he walked behind nor an intended passenger of the car that struck him.

The appellant does not indicate the section or article of any Constitution violated by this ordinance. City of St. Louis v. Franklin Bank, 351 Mo. 688, 707, 173 S. W. (2d) 837, 846. But even so, the constitutionality of the ordinance is not subject to review upon this appeal because the ordinance and its violation was specifically pleaded in the respondent's petition and the appellant did not challenge its constitutionality at the earliest moment in its answer or by demurrer. McGrath v. Meyers, 341 Mo. 412, 107 S. W. (2d) 792; Magill v. Boatmen's Bank (Mo.), 250 S. W. 41, 42. This may be an antiquated ordinance and, in view of the present, an anachronism but we may not repeal it for that reason alone nor for the additional reasons that it is harsh, inconvenient or inappropriate to the times. 2 Dillon, Municipal Corporations, Sec. 584, p. 919; 37 Am. Jur., Sec. 186. Assuming that the court has the power to set it aside—not as unconstitutional—but merely because of its indefiniteness, uncertainty or unintelligibility (2 Sutherland, Statutory Construction, pp. 446, 447; Crawford, Statutory Construction, Sec. 198) we do not think the ordinance so defective in these respects as to be incomprehensible or wholly unintelligible. Diemer v. Weiss, 343 Mo. 626, 122 S. W. (2d) 922. The ordinance has been interpreted and applied. Loehr v. Wells (Mo. App.), 253 S. W. 461, 464; Wilson v. Wells, 321 Mo. l. c. 937, 938, 13 S. W. (2d) l. c. 544. The more doubtful problem is whether the respondent comes within the class of persons entitled to invoke the protection of the ordinance. State ex rel. Anderson v. Daues (Mo.), 287 S. W. 603. However, the ordinance is not subject to the single strict construction that it applies only to a person who has alighted from the car he walks behind or to a person who is about to board the car that hits him. It is reasonably subject to the interpretation that it applies, as it says, "whenever any car is about to pass another car going in the opposite direction, (Loehr v. Wells, supra) at a point where it is permissible to passengers to alight from or to board a car" and not alone to one who has been or is in the

act of becoming a pasenger. Therefore, the ordinance being applicable to the place and the physical circumstances described, the respondent would reasonably come within that class of the public for whose protection the ordinance was enacted. Ward v. Ely-Walker Dry Goods Co., 248 Mo. 348, 154 S. W. 478; Huckleberry v. Missouri Pac. R. Co. 324 Mo. 1025, 26 S. W. (2d) 980; Bluedorn v. Missouri Pac. Ry. Co., 108 Mo. 439, 18 S. W. 1103. The motorman testified that he was familiar with the three mile ordinance, the physical circumstances called for its application and, admittedly, he was not complying with it because he was operating the streetcar at a minimum speed of five or six miles an hour, consequently there was evidence of its violation and it was not error to refuse the withdrawal instruction for that reason. Wilson v. Wells, supra; Kuba v. Nagel (Mo. App.), 124 S. W. (2d) 597, 601.

 To prove the distance in which the streetcar could have been stopped at various speeds the respondent used a witness who had formerly been employed by the appellant as a motorman. After the witness had testified and had been excused the appellant sought to prove, even without having previously cross-examined him on the subject, that the witness had not voluntarily quit his employment but had been discharged because of constant absences from work without cause and failure to account for receipts. It was also sought to be shown by the company's records that the witness had a record of unexcusable accidents. When the respondent objected to some of the records the appellant indicated a desire to recall the witness for further cross-examination with reference to these matters and it is now urged as error that the appellant "was deprived of his right to cross-examine plaintiff's speed witness regarding facts in other accidents which showed conclusively that his present testimony was not true." But, aside from questions of competency, relevancy and admissibility, the record shows that the appellant had a subpoena issued for the witness but the process server was unable to find him. Then the appellant asked for an attachment for the witness and the court said: "I will let an attachment issue and we will adjourn until two o'clock." Counsel then proceeded to offer the exhibits, the company's records, in evidence and after the court had admitted two of them the following occured:

"The Court: . . . You are withdrawing your request about bringing Mr. Wells (the speed witness) back? Mr. Berthold: Yes." Plainly, it seems to us, the appellant waived and abandoned its right, if any, to recall witness Wells for further cross-examination. Furthermore, whether admissible or not, the appellant got the impeaching testimony in evidence and the error, if any, in not permitting further cross-examination of the witness was certainly harmless. Diehl v. Bestgen (Mo. App.), 217 S. W. 555, 556.

■ Finally, it is urged that the $18,000.00 verdict is excessive, so excessive, in fact, as to indicate passion, prejudice and undue sympathy on the part of the jury. Marczuk, a naturalized Pole who testified through an interpreter, was forty-eight years of age when the case was tried in October 1945. At the time he was injured in February he was employed by the International Shoe Company as a heel cutter and had an average weekly wage of sixty-five to eighty-five dollars. He had been unable to work after he was injured and there was evidence that his future earning capacity would be impaired. There was an actual loss of over $2,200.00 in wages. He was in the City Hospital two weeks, De Paul Hospital three weeks and at home in bed for several weeks. At the trial he claimed that he yet had pain in his side and shoulder and that there was a whistling in his head. From being struck by the streetcar Marczuk's first, second, third, fourth, fifth and sixth ribs and probably his seventh and eighth ribs on the right side were fractured. Some of the fractures were multiple with considerable overlapping and separation. At the time of the trial the ribs had healed but the overlapping was apparent and there was some evidence that, therefore, there was some permanent disability to his chest and resulting shortness of breath. There were multiple fractures of his right shoulder blade. The shoulder had healed but was out of place, resulting in permanent limitation of motion. His clavicle was fractured but had healed with good result. While in the City Hospital he suffered from shock and in a day or two had a temperature of 104.4. There was evidence tending to show that he had traumatic pneumonia and possibly a concussion. The appellant's examining doctor said: ''There is a bony prominence at the acromioclavicular ■ junction on the right. That means where the collar bone joins the shoulder it sticks up too much. There is some limitation of upward movement in the right shoulder.'' He said the fractures had united but ''not in very good position.'' As to the ribs, he stated that at least six of them had been fractured, some of the fractures multiple, and that they had united but ''Every one has healed with some deformity, out of position.'' Marczuk lost about twenty-five pounds in weight and admittedly experienced considerable pain. He claims other injuries and disabilities but we have set forth only his demonstrable injuries and his less questionable disabilities.

Admittedly, there is no exact formula for gauging whether a verdict is excessive; each case depends upon its own facts. We may only consider the nature and extent of his injuries and losses, his diminished earning capacity, give some consideration to economic conditions and compare the award with the compensation awarded and permitted in cases of comparable injuries. Jones v. Thompson, 353 Mo. 730, 738-740, 184 S. W. (2d) 407, 411; Joice v. M.-K.-T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568, 577. There are no other cases, so far as we know,

550

of identical injuries and losses but the injuries suffered and the damages approved in Varley v. Columbia Taxicab Co. (Mo.), 240 S. W. 218 and Easterly v. American Institute of Steel Constr., 349 Mo. 604, 162 S. W. (2d) 825 are fairly comparable. In view of all the circumstances we cannot say the verdict is excessive and, whether we may properly consider the question or not, it certainly does not show passion and prejudice on the part of the jury. Stokes v. Wabash Railroad Co., No. 39751; Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. (2d) 157.

None of the appellant's assignment of errors being well taken, the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C.; is adopted as the opinion of the court. All the judges concur.