Harley HORRELL, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Appellant.

No. 44343.

Supreme Court of Missouri.

Division No. 1.

March 14, 1955.

Motion for Rehearing or to Transfer to
Court en Banc Denied April 11, 1955.

Lloyd E. Boas, St. Louis, for appellant.

William H. Dahman, Tenney & Dahman, St. Louis, Robert L. Smith, Clayton, for respondent.

COIL, Commissioner.

St. Louis Public Service Company (herein called defendant) has appealed from respondent's $15,000 judgment for personal injuries. Defendant contends that the trial court erred: in giving instruction 1; in the admission and exclusion of evidence; in refusing to declare a mistrial because of an allegedly prejudicial statement by plaintiff; and in refusing to strike allegedly prejudicial comments of the trial court. Defendant also contends that the judgment is grossly excessive. For the reasons stated herein, the judgment should be affirmed.

The evidence was such that a jury reasonably could find the facts to be as they

appear in this statement. Respondent (herein called plaintiff) was an employee of Firestone Tire and Rubber Company. That company rented to, and maintained tires for, defendant for use on its busses. Plaintiff was stationed at defendant's Lindenwood garage and bus storage area during the time in question. His duties were to inspect, repair, keep properly inflated, and otherwise maintain bus tires. On August 5, 1952, plaintiff found a low tire on the inside, right rear, dual wheel of bus 3546. That bus was parked as the northernmost in a row of four busses, each of which was facing south. About two or three feet to the west of this first row was a second row of three busses, each also facing south, the northernmost of which was even with and parallel to the third bus in the first row. Consequently, there was no bus parked in the second row immediately west of and alongside bus 3546, on the west side of which plaintiff was working.

At about 11:30 a. m., plaintiff, pursuant to his standard procedure, was trying to straighten the bent valve stem at the bottom of the inside rear right wheel preparatory to inflating the tire. This operation required him to kneel beside, and work his hand through a small opening in, the west outside dual wheel. While so engaged, he heard the motor of the northernmost bus in the second row start. He looked up and to the south and, through the rear-view mirror attached to the left side of that bus, saw defendant's mechanic, Zahn, in the driver's seat.

Defendant's rules required that, before moving a bus on the storage lot, the driver determine, by an inspection of the surrounding premises, that no one was in a position of danger from the intended movement, sound a horn before moving the bus, and back it at not to exceed five miles per hour. And it was usual for mechanics to start bus motors to build up pressure when they did not intend to move the bus. Plaintiff, having knowledge of those rules and this usual procedure and relying on them, continued his work at the tire. When he heard a noise made by the shifting of gears, he again looked toward the bus he had pre-

viously observed and saw it moving backward "pretty fast" and directly toward him. He succeeded in removing his hand through the space in the outer wheel and had attained a standing position when the left rear corner of the backing bus struck his left elbow and threw him against the side of bus 3546 in such a manner that his chest was against that bus. The backing bus continued for a few feet and, when it stopped, plaintiff was "caught" or "crushed" between the two busses. Zahn then moved his bus in such a manner as to release plaintiff. Immediately thereafter, Zahn said that he did not know plaintiff was there.

Zahn testified that he could have seen plaintiff before he moved his bus if he had looked and if plaintiff was where he said he was. Plaintiff testified that, when he looked up the second time and saw that the other bus was backing toward him, he did not know whether Zahn turned the wheels or, if so, how much, and that "probably his [Zahn's] bus wasn't set straight when he first started out or something." (Defendant's repeated statements in its argument that the evidence was to the effect that the bus "swerved" into plaintiff by some manipulation by the driver after it started backward is not a necessary or even reasonable conclusion from plaintiff's testimony above noted.)

As defendant points out, instruction 1 directed, in the alternative, a plaintiff's verdict if the jury found that Zahn's failure to look out for plaintiff *before* he backed the bus or while he was backing the bus, was negligence and a proximate cause of plaintiff's injury. Defendant contends that the instruction was erroneous because the evidence showed that the failure to have kept a lookout *before* backing the bus could not have been a proximate cause.

■ Our statement of the facts demonstrates that this contention is without merit. Under the evidence, the jury reasonably could find: that Zahn had the specific duty to look out for plaintiff before backing the bus; that he breached that duty by failing to see plaintiff (in a place admit-

tedly observable if he had looked) in the intended path of the bus; that he backed the bus into plaintiff and injured him; that if Zahn had properly "looked out" before he moved the bus and had (as in the exercise of ordinary care he could have) discovered plaintiff, the injury would have been avoided by not moving the bus when plaintiff was in the path of the intended movement. Failure to exercise ordinary care to keep a proper lookout, when the duty to keep it exists, is negligence. And if, as in this case, it proximately contributed to cause the injury complained of, liability follows. Lanio v. Kansas City Public Service Co., Mo.Sup., 162 S.W.2d 862, 866 [7]; Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, 14.

■ The fact that defendant may have been guilty of other specific negligent acts or omissions before or after the backward movement began—such as the manner of backing or the failure to warn or to stop, which acts and omissions may have also proximately contributed to cause the injury—does not, under the facts of this case, prevent the plaintiff from going to the jury on any negligence of the defendant which contributed to the injury; and this, even though the injury would not have occurred but for the occurrence of the other negligent acts or omissions. Gray v. Kurn, 345 Mo. 1027, 1043, 137 S.W.2d 558, 567 [10].

Defendant's argument that the "mere movement" of the bus could not have proximately contributed to plaintiff's injury apparently confuses "mere movement" with the movement actually made. Certainly, the jury reasonably could have found that the continuous backward movement which the bus actually made caused plaintiff's injury, and that such injury would have been avoided by a proper lookout before beginning the continuous backward movement.

Defendant further contends that instruction 1 was erroneous because "it failed to require the jury to find that by keeping a lookout the defendant saw, or could have seen the plaintiff and knew or should have known, that a collision would result if the bus continued to back up".

■■ As to the contention that the instruction should have hypothesized that "by keeping a lookout the defendant saw, or could have seen the plaintiff", suffice to say that it was an undisputed fact that Zahn not only could have but would have seen plaintiff, if Zahn had looked and if plaintiff was where he said he was. The jury found that plaintiff was where he said he was. It was not necessary, therefore, to hypothesize this undisputed fact. This is not to say that the instruction would have been erroneous for the assigned reason, even if the fact of whether defendant could have seen plaintiff by a proper lookout was disputed. Whether an instruction under such latter circumstances is erroneous for such an omission depends upon the evidence in a particular case. See: Fortner v. St. Louis Public Service Co., supra, 244 S.W.2d 14, 15; Trzecki v. St. Louis Public Service Co., Mo.Sup., 258 S.W.2d 676, 680 [5] [6].

As to the further contention that the instruction should have hypothesized that defendant "knew, or should have known, that a collision would result if the bus continued to back up." Defendant's argument is that even if Zahn had looked, had seen plaintiff in a kneeling position at the wheel of bus 3546, and had started back, still Zahn would thereafter have seen plaintiff attempting to remove himself from the path of the moving bus; and that, therefore, Zahn was not negligent until he knew or should have known that the bus was likely to hit plaintiff. This contention has been answered, in effect, by what we have said heretofore with respect to proximate cause. We may add, however, that the instant case was submitted on primary negligence. While the suggested hypothesis would have been proper in a humanitarian negligence case, in this primary negligence case the suggested hypothesis was only an evidentiary circumstance which the jury could consider in determining whether defendant's employee was negligent for failure to look out before or while backing the bus, in determining the question of proximate cause, and in determining the question of plaintiff's contributory negligence. The suggested hypothesis was

certainly a subject for a jury argument and perhaps a basis for a defendant's instruction; but clearly it was not an essential element of plaintiff's primary negligence case.

■ Defendant's counsel had been cross-examining plaintiff extensively and pointedly in developing that the only times plaintiff had seen a Dr. Cole (plaintiff's witness) were immediately prior to various settings of the case. Plaintiff had been asked several times about the dates of his visits and whether Dr. Cole had or was treating him. Plaintiff had answered that Dr. Cole had not treated him. Defendant's counsel pursued the matter in an attempt to emphasize that Dr. Cole's examinations were solely for the purpose of furnishing a basis for later testimony, and in this connection: "Q. * * * Now, let me ask you, you just go back to him [Dr. Cole] for a checkup? A. Going back for a checkup until I get some money. Then I am going to a doctor."

Immediately the following took place out of the jury's hearing: Mr. Boas:—I am compelled to move for a mistrial. He said he was going to keep going back until he could get some money and then he was going to get some treatment. I am going to move for a mistrial; highly prejudicial statement." The trial court overruled the motion, whereupon defendant's counsel requested that the jury be instructed to disregard the statement "that he had to get some money before he could get some treatment." The trial court was of the opinion that the answer was responsive as an explanation of why he was going only for examinations and not for treatment. At the suggestion of plaintiff's counsel, however, the trial court instructed the jury to disregard "the answer of the witness that he was waiting to get some money and then he is going for treatment."

Defendant claims that the trial court erred in refusing to declare a mistrial because of plaintiff's answer. Its argument is that plaintiff could have had no other purpose than to obtain the sympathy of the jury in view of the fact that it had been shown that plaintiff had been treated by a Firestone doctor under Workmen's Compensation and, in view of the inference, that such treatment was still available.

Defendant's contention is untenable for several reasons, but suffice to say that, even if we assume that the answer was not technically responsive, still it was the kind of an answer called for after persistent cross-examination on the same subject—that is, it was natural for plaintiff to believe it necessary to explain why he was being examined and not treated. But, in any event, the decisive fact is that we could not rule, under the circumstances, that the trial court abused the wide discretion which it has in such matters, by complying with a request to instruct the jury to disregard the statement and refusing to discharge the jury. We think it is apparent from the circumstances that the trial court did not err in refusing a mistrial.

■ Defendant contends that the trial court erred in admitting certain evidence. Over objections that the questions called for hearsay, plaintiff was permitted to testify, in substance, that defendant's foreman, Newton, told plaintiff that there were rules in effect which required that, prior to moving a bus, the driver first determine whether anyone was in the area of the movement and, if so, notify him of the intended movement and sound a horn before moving the bus and, after starting, look out for persons during the movement. Defendant's motions to strike the testimony were overruled.

It is not clear to us that those statements made to plaintiff by defendant's foreman were not within the scope of the foreman's authority and thus binding on defendant. But in any event, decisive of defendant's contention is the fact that the existence of the rules was proved, without objection, by defendant's witnesses. Under the circumstances, the only effect of plaintiff's testimony was that he had knowledge of the existing rules. No prejudice to defendant could have resulted.

Defendant's next point with reference to the admission of evidence is best illustrated by this from the transcript:

"Q. Have you [plaintiff] ever gone back there [Firestone] to attempt to work? A. Doctor Simon said—

"The Court: Just answer the question, sir. Have you ever gone back to attempt to work? A. Yes, I have.

"Q. (Mr. Dahman) And did you return to work? A. No; he said he didn't have nothing for me.

"Mr. Boas: Wait just a minute. I object to what somebody said, your Honor.

"The Court: Who said it? A. My boss, Tom Haley.

"Mr. Boas: I object; the question is simply did he go to work.

"The Court: Yes, that is the question. He said no.

"Mr. Dahman: I asked if he attempted to go back to work, your Honor.

"The Court: Well, he said yes.

"Mr. Dahman: Yes.

"Q. And were you able to return to work? A. No."

▋ Defendant now contends that the trial court erred in failing to exclude the witness' statement as to what the Firestone employee told him, on the ground that the answer was hearsay. That the trial court did not err is demonstrated by the foregoing excerpt. The trial court effectively took the only action requested by defendant's counsel when he made it clear that the question as to whether plaintiff did return to work at Firestone called only for a yes or no answer. The effect of the trial court's action was to sustain defendant's objection.

▋ Defendant next complains of the admission of the testimony evidenced by these questions and answers in plaintiff's direct examination:

"Q. And did Doctor Simon also prescribe a Thomas collar for you? A. Yes, he did.

"Q. And have you worn that or what was your history with wearing that? A.

Well, I wore it a while and I told Doctor Simon that it wasn't seeming to be doing me any good." Defendant's counsel interposed: "I object to what he told the doctor; violation of the hearsay rule." The objection was overruled. Aside from the fact that there was no motion to strike the answer, it is apparent from an examination of the record that this statement was wholly unimportant on any issue in the case and could not have prejudiced defendant. This, because plaintiff testified as to the effect of the Thomas collar in so far as the relief it gave him. His statement to the doctor concerning the collar's effect on him did not add to or detract from the total substance of his testimony on that subject.

▋ Defendant's next claim is that the trial court erred in refusing to strike a statement contained in an answer of one of plaintiff's medical witnesses. Defendant's counsel was cross-examining Dr. Phillips:

"Q. You don't know that he [plaintiff] sat on that stand this morning and raised his left hand up like that and said it didn't hurt a bit, did you? A. No sir.

"Q. Would it make any difference if I told you that he did that? A. I would believe you.

"Q. Well, then, would you think maybe that he [plaintiff] was in error when he told you December 3rd that he couldn't do it without a lot of pain? A. Now, you know and I know, too, that pain is a funny sort of thing, and that is, you don't always have the same pain; you get a toothache and at times it is gone. All I know is that Mr. Horrell told me in the office, and he raised his arm all the way up for me, but he said, 'Doctor, it hurts after I get it to here (indicating)', and I had to believe Mr. Horrell. If he did this morning and said he didn't have pain, I would believe him because I think he is an honest man."

Defendant contends that, in overruling the motion to strike, the trial court in effect erroneously approved the expression of the doctor's opinion as to the credibility of plaintiff. We think, however, that the answer was responsive to the question asked. The

question called for the doctor's opinion as to whether he thought plaintiff was telling the truth on a prior occasion when plaintiff said he could not raise his arm to a certain position without pain. The effect of the question was to call for an opinion on plaintiff's credibility. Defendant may not now complain that its counsel received the very answer his question legitimately elicited.

Defendant contends that reversible error occurred because: the trial court admitted, over objection, certain testimony of Drs. Phillips and Cole when it did not constitute substantial evidence because too speculative; the trial court erroneously refused to permit defendant to read to the jury the allegations of injuries contained in a paragraph of plaintiff's petition; the trial court erroneously commented (and refused to strike the comment in connection with an objection that no injury to plaintiff's legs had been pleaded) to the effect that limitation of motion of the legs may be caused by injury to some other part of the body; the trial court erred in the admission of testimony (other than those instances heretofore reviewed). However, these assignments are not preserved for our review. Defendant's motion for new trial contains several specific assignments of error relating to various matters at the trial. None, however, relates to any of the above noted matters. Nor is there any general assignment or assignments in the motion relating in any manner to the presently alleged errors. "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for new trial;" (with certain exceptions not here involved). 42 V.A.M. S. Supreme Court Rules, rule 3.23. And defendant does not contend that these errors, alleged for the first time on this appeal, call for our review under S.C.Rule 3.27. And, we may add, we are of the opinion that no reversible error occurred by reason of any of these nonpreserved matters.

Defendant, as noted, contends that the verdict is grossly excessive. The trial court overruled the assignments that the verdict was against the weight of the evidence and was grossly excessive. Con-

sequently we view the evidence as to plaintiff's injuries in the light most favorable to affirming the action of the trial court.

Plaintiff, 55 at trial time, was earning prior to the casualty about $3,500 a year, was able-bodied and in good health, was engaged in heavy manual labor and, due to his injuries, had not worked or earned since the accident. At trial time he had lost $4,700 in wages and had incurred $450 in medical expenses.

Immediately following the accident he was hospitalized for one day, then remained at home (except for trips to doctors' offices) in a chair (day and night) for 3½ weeks. His condition had become progressively worse in so far as concerned his ability to physically function. At trial time his neck, right arm and shoulder, and back bothered him, causing pain and sharp pain on certain movements. There was a "knot" on his collar bone in the area of the sternoclavicular joint. He had limited use of his right arm and could not lift anything heavy. He was unable to sleep at night except for short periods. He had worn a Thomas collar intermittently since the accident. His neck was stiff and the motions of his right arm and shoulder, his head, and his neck were limited.

For 30 days after the accident, he was attended by a doctor two or three times a week. During the fall and winter of 1952 he went to a doctor three times a week taking heat treatments. From March until May 1953 he saw a doctor twice. Between May 1953 and trial time, he had been examined but had had no medical treatment.

A summation of the medical evidence adduced by plaintiff justifies the following statement as to the nature and effect of plaintiff's injuries. He sustained these injuries as a result of the instant accident on August 5, 1952: two fractured ribs which had healed satisfactorily; a partial dislocation of the right sternoclavicular joint; a ruptured or partially ruptured disc between the 5th and 6th cervical vertebrae with nerve involvement causing involuntary muscle spasm of the upper back, right side,

right shoulder and neck; a tear of the rotator cup in the right shoulder. The injury to the muscles and soft tissues in the right shoulder is permanent but will not be progressive if the pressure on the nerves is removed by operating the ruptured disc in the cervical spine, but such an operation is not indicated. The neck condition and the partial dislocation of the right sternoclavicular joint are permanent.

These conditions and injuries had manifested their effects progressively so that at trial time the lateral motion of the head was limited to ten per cent of normal, the limitation of forward and backward motion of the head was complete (100%), forward and backward bending of the body was limited to 75% of normal, and straight leg raising was limited to 50% of normal. Plaintiff's head protruded markedly to the left, his shoulders drooped, and he walked in a rigid or fixed position.

In the opinion of one of plaintiff's doctors, plaintiff was wholly unemployable at trial time and, unless relieved of the pain caused by various body movements, was permanently disabled from holding employment of any kind.

Taking into account the frequently stated factors we consider on the question of excessiveness, the nature, extent, and effect of plaintiff's injuries, recognizing that there are accrued special damages of $5,150, it seems to us that we may not interfere with the $15,000 verdict approved by the trial court. We are supported in this conclusion by these cases: Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 549, 196 S.W.2d 1000, 1006, 1007; Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35, 39 [6], 41 [7].

The judgment is affirmed.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court.

All concur.