Josephine FONTANA, Appellant,

v.

Floyd Allen DAVIS, Respondent.

No. 23962.

Kansas City Court of Appeals.
Missouri.

Oct. 5, 1964.

Knowlton & Drape, Kansas City, for appellant.

Thomas A. Sweeny, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

CROSS, Judge.

In this action plaintiff Josephine Fontana seeks to recover damages from defendant Floyd Allen Davis in the sum of $10,000.00 for personal injuries she claims to have suffered in an automobile collision. A jury trial resulted in a verdict and judgment in favor of defendant. Thereafter, the trial court overruled plaintiff's motion for a new trial. Plaintiff appeals.

The facts here set out will be sufficient for our consideration of two assignments of error made by plaintiff. On August 30, 1961, at approximately 8:00 P.M., plaintiff was riding as a passenger in a Ford automobile being driven by her father, Angelo Licata, in an easterly direction along High-

way No. 40 and toward intersection with a north and south street in Independence, Missouri, known as Sterling Avenue. Mr. Licata testified that it was his intention to make a left turn into Sterling Avenue, and that as he approached the intersection the traffic light was green for east and west travel, but that he couldn't make the turn because of oncoming traffic, so he "just stopped and waited for the traffic" which he described as "heavy". Licata stated that when the light turned yellow he saw defendant's automobile a hundred yards or more away, but that he "figured" he could make his left hand turn on the yellow light because he thought defendant had "plenty of room to stop". Accordingly, Licata then drove the Ford to the left into Sterling Avenue and undertook to cross the two westbound lanes of Highway 40. He cleared the inner lane and traveled about half way across the outer lane, where his vehicle was struck on the right rear by defendant's automobile and "pushed * * about four or five feet over on Sterling".

Defendant Davis testified that just before the collision he was traveling westbound on the northernmost lane of Highway No. 40 at a speed of 40 to 45 miles an hour, that when he was only two or three car lengths from the Sterling Avenue intersection the traffic light turned yellow, and that he then saw the Licata car pulling out from behind another westbound automobile which had stopped in the inside or south lane to make a left turn toward the south on Sterling Avenue. Davis said that he immediately applied his brakes as hard as he could when he saw the Licata car turning in front of him at the stated distance of two or three car lengths, that in so doing he laid down 60 feet of skid mark, but that he was unable to stop. After the defendant's vehicle had been slowed to approximately 20 miles per hour, it collided with the Licata car in the northernmost lane for westbound travel. The front of the Davis car struck the right rear fender of the Licata car. At the scene of the accident, defendant inquired of Mr. Licata

whether any one in his automobile was hurt. Licata stated that a child passenger had received a scratch on its hand, but that no one else in the car was injured.

At the time of the collision plaintiff was riding in the front set of the Ford car next to the right front door, but she does not claim to have seen defendant's car before the collision. She testified that "right at the time" (after the impact) she thought nothing had happened to her to cause injury, except that she "felt the jab of this arm-rest on the door". When asked by a lady at the scene of the accident if she had been hurt, plaintiff state, "No, I don't think so". Later that evening plaintiff still didn't think she was hurt and she "went right on to bed". Next morning, according to her testimony, she was "just black and blue all over". She consulted a physician, Dr. Downey, to whom she complained that she was "just sore and sick all over". She claimed she was having "trouble" around her neck and shoulders, and all over her side, arm, and leg, and that "it was just quite a bit of all over my body". Dr. Downey's treatment of plaintiff on this occasion consisted of giving her some sleep inducing medicine. Plaintiff said she returned to the doctor at different intervals—about eight or nine times altogether—and that "about all he was giving me was these pills to put me to sleep and telling me to lie down, take it easy and rest, not do any housework or any pushing or lifting or anything of that sort". During this period of time no X-ray examination of plaintiff was made. Plaintiff's complaints as of the time of the trial were that she had pain in her neck, back and shoulders and that her stomach still "bothers" her. The transcript contains no medical testimony on behalf of either party.

It is further shown by plaintiff's testimony that on May 19, 1962, almost nine months after the automobile collision, she slipped and fell on the floor at her home. At the direction of Dr. Downey, to whom she talked by telephone after sustaining

her fall, she went to St. Mary's Hospital for examination. According to the hospital "Emergency Record" which plaintiff produced in evidence as "Plaintiff's Exhibit I" she gave the following history of her fall: "Patient sat down forcibly on wet floor after slipping this A.M." An X-ray picture of her back was interpreted by the hospital radiologist as follows: "Impression: Compression fracture superior margin of D.6". Plaintiff was not admitted to the hospital as a patient but returned to her home after the examination.

Plaintiff's case was submitted to the jury under her verdict directing instruction (Instruction No. 1) which reads as follows: "The Court instructs the jury that if you find and believe from the evidence that on or about August 30, 1961, in the vicinity of 40 Highway and Sterling Avenue, plaintiff was a guest passenger in an automobile being driven in an easterly direction on Highway 40 to a northerly direction on Sterling Avenue, and using ordinary care for her safety, and, at the same time an automobile driven by defendant, Floyd Davis, was being operated in a westerly direction on said Highway 40, and, if you find that defendant Davis, by keeping a constant lookout ahead and laterally, could have seen and observed the automobile in which plaintiff was a guest passenger, and that thereafter defendant Davis could have by the highest degree of care avoided colliding with the automobile in which plaintiff was a passenger, and that defendant Davis negligently failed to do so, and that in so doing defendant Davis failed to exercise the highest degree of care and was thereby negligent, and if you find that such negligence directly caused injuries to the person of the plaintiff, then your verdict should be in favor of plaintiff, Josephine Fontana, and against defendant Davis".

Plaintiff's first point is a contention that the trial court erred in giving defendant's Instruction No. 8 "because it is an abstract statement of law inapplicable to the case,

does not hypothesize any facts; if it is a converse instruction, it is not an exact converse of plaintiff's submission, or the converse of any one of the elements essential to plaintiff's recovery and does not submit facts which disprove factual elements necessary to plaintiff". Instruction No. 8 reads as follows: "The Court instructs the jury that if you find and believe from the evidence that on the occasion in question Mr. Davis was at all times exercising the highest degree of care to keep a lookout ahead and laterally for vehicles with which there was danger of collision, then your verdict must be in favor of Mr. Davis, the defendant, and against the plaintiff".

In deciding whether Instruction No. 8 is erroneous or proper we first examine plaintiff's verdict directing Instruction No. 1 for comprehension of its meaning and to ascertain the issues it defines and submits. In so doing we are mindful of all the basic and well established principles governing such inquiry, including the rules that instructions are to be read and construed in the light of the issues pleaded and presented upon trial and the evidence adduced, and, that the meaning of an instruction is to be determined from its entirety and not from isolated words or phrases. See State ex rel. Burcham et al. v. Drainage District No. 25, Mo.App., 280 S.W.2d 683, and cases cited. Plaintiff's petition is materially significant to the question at hand, since instructions "should conform to the pleadings", and, generally, "should not be broader than the issues made by the pleadings". Raymond, Missouri Instructions, Vol. 1, Sec. 91, pp. 71–73.

In her petition plaintiff pleads five separate specifications of primary negligence on the part of defendant as grounds for recovery by alleging that he was careless and negligent in (a) "failing to keep a vigilant and proper lookout ahead and laterally for automobiles which might be on or at said intersection at the time and place in question, including the automobile in which

plaintiff was a passenger"; (b) operating his automobile at a dangerous and excessive rate of speed; (c) failing to have his automobile under proper control; (d) failing to give any warning by horn or otherwise; and (e) failing to stop, swerve or slacken the speed of his automobile. It is clearly apparent from reading Instruction No. 1 that in submitting her case plaintiff abandoned all of the specific grounds of negligence she had pleaded in her petition except the first one—her complaint that defendant failed to keep "a vigilant and proper lookout ahead and laterally for automobiles which might be on or at said intersection * * * including the automobile in which plaintiff was a passenger".

Although Instruction No. 1 is phrased in language broader than allegation (a) of her petition, and contains some nonessential elements which are not present in her pleading and to which we later refer, it is our opinion that the instruction amounts to what is generally referred to as a "lookout" instruction and that the only essential issue of negligence submitted by it was whether defendant had failed to keep a proper "lookout" as plaintiff had charged in her petition.

■ Such a submission is sufficient, and is consistently held to be a proper basis of recovery. Numerous cases so holding include Lincoln v. Railway Express Agency, Inc., Mo.Sup., 359 S.W.2d 759; Anderson v. Bell, Mo.Sup., 303 S.W.2d 93; Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14; Anthony v. Morrow, Mo.App., 306 S.W.2d 581; Jenkins v. Wabash Railroad Co., Mo.Sup., 322 S.W.2d 788. In Lincoln v. Railway Express Agency, supra, the Supreme Court stated that, "In a primary negligence case it is sufficient to submit failure to keep a lookout, together with a finding of causation, and it is 'unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff' or could have averted the collision". (Citing, Fortner v. St. Louis Public Service Co., Mo.Sup., 244

S.W.2d 10, 14, 15 cited and quoted approvingly in Thaller v. Skinner & Kennedy Co., Mo.Sup., 315 S.W.2d 124, 130).

■ In drafting plaintiff's Instruction. No. 1, its author has seen fit to include required findings for which there is no basis, in the petition, which are not pleaded as grounds of negligence, and which are not. essential to recovery. We refer to those portions of the instruction which require the jury to find that by keeping a proper lookout defendant (1) could have seen the automobile in which plaintiff was a passenger, and (2) could have avoided the collision. In our opinion those hypotheses are only evidentiary circumstances which the jury might consider in determining whether plaintiff discharged his legal duty to keep a lookout. Clearly they are not essential elements of plaintiff's case. See Horrell v. St. Louis Public Service Company, Mo.Sup., 277 S.W.2d 612. Of the instruction we finally say that in its simplest form, and in substance, it contains only three controverted essential elements: (1) the issue of plaintiff's contributory negligence, (2) the issue of whether defendant negligently failed to keep a lookout, and (3) the issue of causation.

■ It is well established by the decisions of Missouri courts that any party who does not carry the burden of proof on an issue is entitled to an instruction submitting a simple negative converse, sometimes called a "true converse" of any one or more of the essential elements of his opponent's theory of recovery or affirmative defense. Dell 'Aria v. Bonfa, Mo.Sup., 307 S.W.2d 479; Liebow v. Jones Store Co., Mo.Sup., 303 S.W.2d 660. Accordingly, a defendant may submit the exact converse of plaintiff's verdict directing instruction, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the converse of any essential element of such instruction, McCarty v. Milgram Food Stores, Inc., Mo.Sup., 252 S.W.2d 343. When either is done, the result is considered to be a "true converse instruction". Such an instruction does not require affirm-

ative testimony to support it and need not hypothesize facts. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461. A defendant may also submit facts in an instruction, the existence of which would disprove or controvert one or more of the essential factual elements of plaintiff's case. This latter type instruction is not considered a "true converse instruction" and requires factual support in the testimony. Liebow v. Jones Stores Company, Mo.Sup., 303 S.W.2d 660.

■ Our examination of defendant's challenged instruction in the light of the above rules leads to the conclusion that it is, in legal effect, an exact converse of an essential element of plaintiff's verdict directing instruction, to-wit, that element which submits the sole issue of primary negligence on the part of defendant. Plaintiff's instruction told the jury, in substance, to return a verdict in her favor if (among other findings) they found that defendant negligently failed to exercise the highest degree of care to keep a "constant lookout ahead and laterally". Defendant's instruction told the jury they must find in defendant's favor if they found that defendant "was at all times exercising the highest degree of care to keep a lookout ahead and laterally for vehicles with which there was danger of collision". Although, as a matter of form, defendant's instruction is not phrased negatively in the identical, word for word language of plaintiff's instruction, we consider its substance to be the legally exact converse of plaintiff's primary negligence submission. "A true converse instruction may be drawn in general terms and need not negative the adversary's instruction". Raymond, Missouri Instructions, Vol. I, Sec. 40, 1963 Cumulative Pocket Part, Ch. 3, p. 22, citing Rhinelander v. St. Louis-San Francisco Ry. Co., Mo.Sup., 257 S.W.2d 655. And, as stated by Judge Hyde in Alberty v. Sunshine Biscuit Co., Inc., et al., Mo.Sup., 321 S.W.2d 418, "A short, clear converse instruction which makes plain to the jury a single essential fact issue, upon which their verdict must depend, is to be commended".

We find no merit in the various points of argument plaintiff has directed against Instruction No. 8, and consequently rule that the trial court committed no error by giving it.

■ In her second point plaintiff contends that the trial court erred by admitting into evidence defendant's Exhibit 1, a single sheet printed form entitled "ACCIDENT REPORT", partially filled in by typewriting, which on its face purports to be a report by St. Mary's Hospital, as an insured under a liability policy, to its insurer, Maryland Casualty Company, of an accident occurring to plaintiff on the hospital premises on May 19, 1962. The exhibit represents that there was an accident in that the "patient sat down forcibly on wet floor", that the nature and extent of her injuries was a "mild fracture of the body of the sixth dorsal vertebra", and that the physician who examined her was "Dr. Woods". The paper contains no other information except that "injured" was "taken home". It bears the date of June 11, 1962, and is unsigned. In support of the instant assignment, plaintiff argues that the exhibit was not properly qualified as a business record and was hearsay evidence as to her. Plaintiff further insists that the error was to her prejudice.

Defendant's Exhibit No. 1 was produced by Louise Santee, custodian of the hospital's medical records, pursuant to defendant's subpoena. She testified that the exhibit was a business office record in the nature of "an accident report record" which she had brought to the court from the business office at the request of "the Sister" who was the hospital's business manager. She admitted that the exhibit was not a record kept in the "Medical Record Department", that it was not in her care, custody or control, that she knew nothing at all about the "circumstances", that the "report" was an unsigned carbon copy, and that she didn't know under what circumstances "the hospital filed this accident report". There is no testimony from the custodian of the record offered, or from any other qualified

witness, "as to its identity and the mode of its preparation" or that "it was made in the regular course of business, at or near the time of the act, condition or event". Therefore, the document was not established as competent evidence under the provisions of Section 490.680 V.A.M.S., and its reception by the trial court was error.

■ Plaintiff's argument that the erroneous admission of the exhibit was to her prejudice, is in full test, as follows: "By the introduction of the accident report, defendant's exhibit, the defendant has told the jury that the plaintiff was injured, not in the accident which is the subject of this suit but at St. Mary's Hospital. Since this goes to the very heart of this case, the admission of this exhibit is prejudicial and plaintiff should be granted a new trial".

We are not persuaded by the foregoing that the admission of the accident report had any adverse effect on the jury's verdict. The fact that plaintiff suffered a fall nine months after the automobile collision, and was thereafter diagnosed by X-ray as having a compression fracture of a vertebra, was first established by plaintiff's own testimony and by her Exhibit No. 1—the hospital emergency record. The only differ-

ence between plaintiff's evidence and defendant's Exhibit No. 1 is that the former shows that plaintiff sustained her fall at her home, and the latter represents the place of plaintiff's fall as the hospital. We think the salient and material circumstance that might have influenced the jury's verdict is the admitted fact that plaintiff had a fall *subsequent* to the accident to which she attributed her claimed injuries, and that X-ray examination conducted after her fall disclosed she had a fractured vertebra. On the contrary, we believe the jury attached no significance to the question whether plaintiff's fall on May 19, 1962 occurred at her home or at the hospital. The real question for their decision was whether her injuries resulted from the collision or from her later fall. Insofar as their deliberations on this issue were concerned, we think it was of no consequence to them whether she fell at one place or the other. We rule that the trial court's error complained of did not materially affect the merits of this action, and constitutes no cause to disturb the judgment. Civil Rule 83.13(b), V.A.M.R.

Finding no reversible error in the record, it is our opinion that the judgment should be affirmed. It is so ordered.

All concur.